FILED - GR
March 12, 2020 10:54 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: __mkc___ SCANNED BY: JW / 3-12-20

IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES RAINS

     Plaintiff,

v

HEIDI WASHINGTON
DEPUTY DIRECTOR (John/Jane Doe)
   FOOD SERVICE CONTRACT MANAGER (John/Jane Doe)
M. CALLENTINE
M. KAKOLA
___ NELSON
___ JUNGCK
K. MINERICK
D. LEIONEN
P. LAMB
DENNIS PETERSON
T, HAMEL
JAMIE MONVILLE
KELLY WELLMAN
STEVE ADAMSON
PATRICIA WILLIARD
G. HILL
A. JEFFERY
DANIEL LESATZ
RICHARD RUSSEL
JOHN JANE DOES
      Defendants.

_____/

**2:20-cv-32**
Paul L. Maloney - U.S. District Judge
Maarten Vermaat - Magistrate Judge

Case No:

_____

CIVIL RIGHTS COMPLAINT
WITH A JURY DEMAND

1

# (1) **INTRODUCTION**

This is a Civil Rights Complaint filed by the Plaintiff **JAMES R. RAINS,** a state prisoner alleging a denial of his right to free exercise clause, establishment clause in violation of the first amendment, deliberate indifference to his basic human and health needs in violation of the eighth amendment; due process clause; equal protection clause, and discrimination in violation of the fourteenth amendment and for violation for religious land use and institutionalized persons act. Plaintiff is also seeking injunction and money damages.

# (2) **JURISDICTION AND VENUE**

This is a Civil Rights Action authorized by 42 USC Section 1983 to redress the deprivation under color of state law of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 USC section 1331 (a)(3). Plaintiff Rains seeks declaratory relief pursuant to 28 USC Section 2201 and 2202 Plaintiff's claims for injunctive relief are authorized by 28 USC Section 2283 and 2284 and Rule 64 of the Federal Rules of Civil Procedure.

The Northern District of Michigan is an appropriate venue under 28 USC section 1391(b)(2) because it is in the direct location of the Marquette Branch Prison and the Baraga Correctional Facility that gave rise to the claims raised in this complaint.

# (3) **PLAINTIFF**

Plaintiff James Rains is and was at all times mentioned herein a prisoner of the State of Michigan in the custody of the Michigan Department of Corrections. Plaintiff is currently incarcerated at the Baraga Correctional Facility 13924 Wadaga Rd Baraga Michigan 49908.

## (4) **DEFENDANTS**

(1) Defendant **Heidi Washington** is employed by the MDOC as the **Director** of the Michigan Department of Corrections who is legally responsible for the operations of all of its prisons oversees all of the prisons, and the welfare of all its inmates. Her office is located at the Michigan Department of Corrections Central Office Facilities, P.O. BOX 30003 Lansing Michigan 48909.

(2) Defendant **john/Jane Doe** is employed by the MDOC as the **Deputy Director** of the Michigan Department of Corrections who is legally responsible for the operations of all of its prisons oversees all of the prisons, and the welfare of all its inmates. His/Her office is located at the Michigan Department of Corrections Central Office Facilities, P.O. BOX 30003 Lansing Michigan 48909.

(3) Defendant **Steve Adamson** is employed by the MDOC as the **Special Activities Coordinator** of the Michigan Department of Corrections who is legally responsible for all of the programs throughout the Michigan Department of Corrections. His office is located at the Michigan Department of Corrections, Central Office Facilities, P.O. BOX 30003 Lansing Michigan 48909.

(4) Defendant **John/Jane Doe** is employed by the MDOC as the **Contract manager** who is legally responsible, in pertinent part over All food service contracts. His/Her office is located at the Michigan Department of Corrections Central Office Facilities, P.O. BOX 30003 Lansing Michigan 48909.

(5) Defendant **Patricia Willard** is employed by the MDOC as a **Dietician**. Her office is located at the Michigan Department of Corrections Central Office Facilities, P.O. BOX 30003 Lansing Michigan 48909.

(6) Defendant **M .Callentine** is employed by the MDOC as a **Food Service Director** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(7) Defendant **Hakola** is employed by the MDOC as a **Food Service Supervisor** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(8) Defendant **Nelson** is employed by the MDOC as a **Food Service Supervsor** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(9) Defendant **Jungck** is employed by the MDOC as a **Food Service Supervisor** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(10) Defendant **K. Minerick** is employed by the MDOC as a **Food Stewart** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(11) Defendant **D. Leionen** is employed by the MDOC as a **Food Service Supevisor** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(12) Defendant **Dennis Peterson** is employed by the MDOC as a **Deputy Warden** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(13) Defendant **T. Hamel** is employed by the MDOC as a **Grievance Coordinator** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(14) Defendant **Daniel Lesatz** is employed by the MDOC as a **Warden** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(15) Defendant **Kelly Wellman** is employed by the MDOC as a **Dietician**. Her office is located at the Central office, P.O.BOX 30003 Lansing Michigan 48909

(16) Defendant **Gloria Hill** is employed by the MDOC as a **Health Unit Manager**. Her office is located at Central Office, P.O.BOX 30003, Lansing Michigan 48909.

(17) Defendant **Richard D Russell** is employed by the MOOC acting as the **Grievance Manager** at the MDOC Office of Legal Affairs P.O. BOX 30003 Lansing Michigan 48909 at all times relevant to this complaint.

(18) Defendant **Collins** is employed by the MDOC as a **Food Service Supervisor** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(19) Defendant **Hansvick** is employed by the MDOC as a **Food Service Supervisor** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(20) Defendant **Johnson** is employed by the MDOC as a **Food Service Supervisor** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(21) Defendant **Mulani** is employed by the MDOC as a **Food Service Supervisor** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(22) Defendant **Patricia Lamb** is employed by the MDOC as a **Nurse.** Her office is located at Central office P.O.BOX 30003, Lansing Michigan 48909.

(23) Defendant **Jamie Monville** is employed by the MDOC as a **Health Unit Supervisor** at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(24) Defendant **John/Jane Does** are employed by the MDOC as Food Service Supervisors at the Baraga Correctional facility, 13924 Wadaga Rd. Baraga Michigan.

(25) At all times relevant to this complaint, all the Defendants acted under the **Color of State law.**

(26) At all times relevant to this compliant all the Defendant acted in both their **Individual and Official capacities.**

5

## (5) STATEMENT OF FACTS

(1) Plaintiff has brought a civil rights complaint pursuant to 42 U.S.C. §1983 alleging violations of his rights under the (I) Equal Protection clause of the 14th AM of the U.S. Const; (2) The Free Exercise of Clause of the 1st AM of the U.S. Const, (3) the Michigan Constitutions Equal Protection Clause and Free Exercise Clause Article I, 2 and 4, respectively and £40 the Religious Land Use and Institutionalized Persons Act of 2000, 42 USC § 2000cc et seq (RLUIPA).

(2) Plaintiff Rains is incarcerated within the MDOC housed at the Baraga Correctional Facility.

(3) Plaintiff arrived at the Baraga Correctional Facility in November 2017.

(4) Plaintiff is a practicing Muslim who follows the teachings, beliefs and practices of Islam.

(5) Plaintiff makes referene to the Quran that says it is (Allah) who has created for you all that is on earth (2:229) and only that which Allah and his prophet has forbidden are Muslims not allowed to eat. Plaintiff states that the Quran says about that Forbidden to you are: All Maitah (animals that are not slaughtered), blood, the flesh of swine (pork) and what has been slaughtered for other than Allah and that which has been killed by strangling, by a violent blow, or by a headlong fall or by the Wing of horns and that which has been partly eaten by a wild animal unless you are able to slaughter it before its death and that which is sacrificed (slaughtered) on AN Nusub (stone alters) (5:3).

(6)     Plaintiff has declared his religion as Muslim in accordance with MDOC Policy Directive P.D. 05.03.150 and MDOC O.P. 05.03.150.

(7) In June or July of 2018 Plaintiff per policy requested to be placed on the Halal trays in an effort of compliance with his religion and in accordance with policy.

(8) On August 28, 2018, Plaintiff was approved for the Halal religious trays.

(9) On May 10, 2019 Plaintiff was classified to Administrative Segregation.

(10) On June 16, 2019 Plaintiff filed a grievance, grieving the fact that, having kited to be placed on Halal trays, he still hadn't received his trays, nor a response to the test he's taken to be placed on the Halal diet. AMF 19-061289-20E. On June 20, 2019, the Chaplain reviewed the grievance with Plaintiff Rains, telling him that he had been approved for the Halal trays since August 28, 2019 and should have been receiving them. Chaplain Snyder also told Rains that he should get them as notification reached the right individuals. When Plaintiff asked why it had taken 10 months and a grievance to receive his trays, the Chaplain could not give an answer, nor could any other staff.

(11) On June 24, 2019 Plaintiff Rains filed a grievance on the fact that for 10 months he was denied the opportunity to practice his religion by receiving his Halal trays and no one could explain why AMF 19-06-1367-20E. It was rejected as a duplicate.

(12) When Plaintiff started receiving his Halal trays, he immediately observed the fact that the food he was receiving was disproportionate, half cooked and uncooked, tasted as if it was spoiled or something, and that there were food items that he should have been receiving, that he wasn't. Plaintiff wasn't and isn't being allowed any dairy, fish and meat and is being forced to endure a vegan diet.

(13) On June 25, 2019 Plaintiff Rains grieved the issue with the trays and food. AMF 19-06-1366-09E. Rains was mocked by K. Minerick who stated that if Rains wanted diary, meat and/or pizza, he needed to kite the chaplain and **get put on a regular diet**. Leionen signed off on the nature of the response and he wasn't interviewed nor was a reason given for not interviewing him.

(14) In the Step 2 grievance, Rains explained that even if the Halal had always been a strict vegan tray, he should still receive things as pizza, grilled cheese, mac & cheese, etc... because of vegan cheese. The issue still went unresolved.

(15) At Step 3, Rains attempted to explain that nothing in his religion prohibits him from having the food he grieved about, except that it is prepared a certain way. Also that the respondents failed to address the half cooked and uncooked food portion of the grievance, as well as the vegan cheese bid. And finally, that he's being forced to be vegan with no choice. On August 27, 2019 Richard Russell denied the Step 3 without investigating.

(16) On October 2, 2019 Plaintiff sent a medical kite for the SOY causing him sharp pains, vomiting and making him nauseous. He was seen the next day by a nurse.

(17) When the nurse placed Rains on the callout to address the issue, Rains explained to the nurse that he was having stomach pains, diarrhea, vomiting etc., and while he thought she was documenting the symptoms as he told them to her, she was really misrepresenting his issue as acid reflux, though he (Rains) never said anything about Acid reflux.

(18) On or around October 8, 2019 Rains sent a letter to Deputy Director John/Jane Doe about receiving binned fish for his Halal trays, but didn't get a response.

(19) On October 15, 2019 Plaintiff filed a grievance on the fact that he was being discriminated against for his religious trays. AMF 19-10-2136-20E.

(20) On October 16, 2019 Plaintiff wrote a grievance on the fact that he was being discriminated against for his religious trays. AMF 19-10-2136-20E.

(21) On October 16, 2019 Plaintiff wrote another kite to medical about the **SOY** issues he was having.

(22) On October 18, 2019 Plaintiff was called out to see the doctor. Doctor Oh told Rains that Rains was on his itinerary to be seen for acid reflux and when Rains told Dr. Oh that he Rains didn't put in medical kites for acid reflux, then tried to explain to the Doctor what the complaint was, Dr. Oh cut Mr.Rains off in mid-sentence, telling him that if he (Rains) was denying acid reflux, he wasn't going to be seen. Dr. Oh then dismissed Rains without asking what the issue was or doing a physical exam.

(23) On October 9, 2019 Rains kited Food Service Callentine, Supervisor Hakola, and Food Service Supervisor Nelson about having sent non halal bread in his trays. After not receiving a response after constant waiver, on October 19, 2019 Rains grieved this issue about the bread. MIF 19-10-2161-20E. In response they stated that all bread at the facility was now kosher.

(24) On October 25, 2019 Plaintiff filed a grievance because after putting in kites to medical about the problems that the **SOY** was causing him, medical still hadn't done anything to resolve this issue AMF 19-10-21 95-12-H3.

(25) On November 4, 2019 RN 13 Jamie Movville responded to the grievance AMF 19-10-2195-12b3 asserting that:

Prisoner **WAS NOT** interviewed no further clarification is needed, see attached. Dietician Wellman was consulted. No kites have been received by dietician as of 11-1-19. Kite response on 10-3-19 **prisoner kited that he could not keep the halal tray down**. He was seen cellside by the R.N. and was scheduled to be seen. Prisoner was provided anti acid, referred routinely to MP. Prisoner was seen by Dr, on 10-18-19, he denied any abdominal symptoms, said he never turned in any kite regarding this, and said the appointment was a mistake. O.P. 05.03.150A paragraph (f) does not apply to Mr.Rains as he does not require modification to the religious menu for a medical diet because he does not have a medical diet ordered at this time. Per **MDOC DIET MANUAL, THERAPEUTIC DIETS ARE NOT ORDERED TO ACCOMMODATE INDIVIDUAL FOOD INTOLERANCES**. Given that Mr.Rains has complained 5- 6 vomiting episodes since May while **SOY entrees** are served much more frequently than once per month, his weight has remained stable over the past year and prisoner denied any complaints when seen the medical provider there is no indication for therapeutic diet changes at this time. Response approved by the health unit manager HUM GLORIA HILL Nov 4, 2019.

(26) Plaintiff appealed.

(27) The facts establish that the MDOC Health Care does accommodate individual food intolerances, for example, **onion and peanut allergies**.

(28) The facts show record that there are over 160 foods that can cause allergic reactions. The most common food allergies are as follows: Milk and diary, eggs, shellfish and other fish, nuts, **SOY** and wheat.

(29) The facts show that the slightest exposure to a food allergy can prove toxic. In the case of **SOY** the record will show that **Lecithin is highly processed food related to SOY**. The record will show that Food allergies affects the human immune system. A food allergy is a reproducible adverse action to a particular food that involves the immune system. The record will show that nearly all allergens are proteins. It is important to point out that there is a difference between food allergies and food intolerances.

**FOOD ALLERGENS** is a form of food intolerance associated with a HYPER SENSITIVE IMMUNE RESPONSE mediated reaction in which antibodies formed.

**FOOD INTOLERANCE** is a reproducible reaction to a food which occurs without a HYPER SENSITIVE immune response.

(30) The record will show that there are different symptoms for allergic reactions to food. Some people suffer only very mild reactions while some can suffer very serious health effects even death. Typical symptoms of an allergic reaction to food are as follows, for which Plaintiff falls under the category of suffering from a gastro intestinal reaction.:

(A) RESPIRATORY REACTION such as ASTHMA;

**(B) GASTRO INTESTINAL REACTION such as vomiting and diarrhea;**

(C) SKIN REACTION such as dermatitis;

(31) On October 27, 2019 Rains filed a grievance on food service having sent him Halal trays that was missing a main item and when the C/O called over to the kitchen about the issue, Junack said Rains wasn't supposed to get the item because the menu had changed. AMF 19-10-2211-09E.

(32) Rains pointed out in his Step 2 that for (1) the grievance was written on Jungck, yet she was involved in the process in violation of policy, and (2) her lie could be obviously uncovered if someone did proper investigation and though the issue was not resolved in violation of policy and due process. Lesatz still claimed it was resolved.

(33) On October 27, 2019 Plaintiff kited and sent letters to Adamson, Willard and FSCM about the condition of the food, and the problems he was having with **SOY**.

(34) On October 28, 2019 Plaintiff kited Callentine and Food Service Supervisor John/Jane Doe about some powder milk he received in place of what he's previously received and it tasted weird and gave him a headache. There was no response.

(35) On November 1, 2019 having not received a prompt response, Rains filed a grievance AMF 19-11-2270-28E.

(36) On November 4, 2019 having not received a response about the **Soy** issue, Rains filed 3 grievances, AMF 19-11-2271 -28A

(37) Though neither was related nor were they the same, Hamel rejected them both as duplicates AMF 19-10-214-36-20E. Peterson signed off on both without making sure that Hamel had correctly named them as duplicates in violation of policy.

(38) In his Step 2 grievances, Rains explained why and how they (the grievances) weren't duplicates but Warden Lesatz refused to do further investigation and upheld them in violation policy the grievances.

(39) Rains had been noticing a Pattern of kites and letters not returning and not getting responses so he started making carbon copies of each starting in November.

(40) In November 2019, Plaintiff sent out more kites in at another attempt to get the issues he was having with the Halal trays resolved.

(41) On November 4, 2019 Rains sent a grievance about his kites and letters concerning the Halal Trays not being answered and how the food isn't being prepared in accordance with his Islamic law AMF 19-11-2269-28A.

(42) On November 5, 2019 Rains filed a grievance about not. being given an equal opportunity to follow his religious dietary laws, receiving food that doesn't adhere to these laws

12

and being forced to adhere to another Faiths Religious diet (Buddhist) AMF 19-11-2272-28A. Both were rejected as duplicates to MF 19-10-21 36-20E.

(43) On Appeal to Sep 2, Rains had to explain why the grievances weren't duplicates and should be investigated and heard on the merits. Warden Lesatz threw policy to the wind and upheld both rejections.

(44) On November 8 2019 Rained grieved an issue with Food Service where he received his dinner meal for lunch. Then instead of receiving the lunch meal for dinner, Rains was sent the same, which he was forced to abstain from eating all day because of issues he has with **SOY.** AMF 19-11-2302-09E. The Respondent Collins lied in the response stating that Rains had received both the lunch and dinner main meals doe lunch and that per policy they can't change the menu.

(45) Plaintiff Rains in his Step 2 explained that if proper investigation were done, then Conins statement could be shown as a lie but Lesatz refused to investigate and denied Rains grievance.

(46) Rains also sent in another grievance on November 8, 2019 dealing with an issue with food service a few days prior where he had bitten into his bean burger and had found it un cooked with vegetables crunchy and just inedible. AMF 19-11-2303-09E. The Respondent stated the food was sent to Rains at a temperature of 180 degrees.

(47) In his Step 2 Rains had to explain that just because a food has a high temperature doesn't mean that it is thoroughly cooked, and that he is being discriminated against because the regular trays are more mass produced than Halal Trays and there aren't any problems with the regular trays but there are constant and continual problems with the Halal trays. Lesatz denied the Step 2.

(48) On November 11, 2019 Rains submitted yet another medical kite about the **SOY** giving him stomach pains, diarrhea, headaches and making him vomit.

(49) Health Care informed Rains that, there would be nothing done for him.

(50) On November 11, 2019 Plaintiff Rains grieved Washington, Wellman, F.S.C.M. and Willard for denying him an opportunity **to receive substitute items on his menu** AMF 19-11-2382-28A. It was rejected as a duplicate of AMF 19-10-2136-20E.

(51) On appeal, Rains explained why it was not duplicate, but Lesatz upheld the rejection.

(52) On November 12, 2019 Rains kited Callentine, Wellman and Lesatz in a final attempt to have something done about his religious trays and his Halal trays.

(53) On November 13, 2019 Rains filed a grievance on the fact he had gotten carrot apple salad on his Halal Trays, but there were potatoes in it, and even when the C/o's on duty were witness to it, when they called food service about it, Food Service still refused to address the issue. AMF 19-11-2344-09E. Respondent Johnsons response was what inmate thought were potatoes were chopped apples.

(54) In his Step 2, Rains complained that he knows what an apple is and what an potatoe is and that there were potatoes in his carrot apple salad and al so that Johnsons lie could be further proved as such by the C/o's that were on duty and witnessed potatoes in Rains carrot apple salad. mistakenly wrote my step 2 appeal on AMF 19-11-2403-12HI but it was still denied by Lesatz.

(55) Rains filed a grievance on November 13, 2019 about a tray of uncooked food, and Then the C/O on duty called the kitchen about it, the kitchen sent over more of the same uncooked food. AMF 19-11 -2351 -28A. It was rejected as a duplicate to AMF 19-11 -2309-09E.

(56) Rains explained in his step 2 that AMF 19-11-2351-28E and 19-11-2309-09E were separate issues and how AMF 19-11-2351-28E should be reviewed on its merits, and still Lesatz upheld rejection.

(57) On November 15 2019 Rains filed a grievance on having written kites to Wellman, Callentine and AMF Food Service Supervisor about the issues he's having with the Halal trays and how they're not being answered AMF 19-11-236628A.

(58) Again, another grievance was rejected as a duplicate to AMF 19-10-2136-20E and Rains had to explain why it wasn't in his Step 2, but Lesatz upheld the rejection.

(59) Rains also sent out another medical kite concerning the **SOY** on November 15, 2019 but was told as a response that nothing would be done.

(60) On November 19, 2019 Rains kited Hamel expressing his concern about Hamel constantly rejecting his grievances as duplicates when they have zero relevance to the grievances they're being referred to as duplicates of.

(61) Hamel response was to place Mr. Rains on Modified Access to the grievance system.

(62) On November 21, 2019 after not receiving any responses from the letters, Rains had sent Washington and Peterson, Rains filed a grievance on being forced to adhere to a Religious diet that was not his own and being denied his right to practice his religion. AMF 19-11-2381-28A. It was denied as a duplicate to AMF 19-10-2136-20E

(63) Plaintiff Rains appealed explaining why his grievance was not a duplicate. Warden Lesatz upheld the rejection.

(64) On November 25, 2019 Rains kited Hamel again expressing his concern that Hamel was not performing his duty in accordance with policy but got no response.

(65) On November 25, 2019 Rains sent in another kite to medical explaining his issues with the **SOY** and asking to get his diet modified accordingly.

(66) Rains also kited on November 25, 2019 food service about not being given **a choice when it came to the healthy choice option** on the trays for the meals.

(67) On November 27, 2019 Rains in an attempt to comply with the memorandum of Modified Access kited Hamel for 3 grievances: 1 request for writing up the healthy choice; 1 request to write up being forced to eat food that was making him physically ill; and 1 request to write up Hamel for rejecting so many of his grievances as duplicates in violation of policy. All 3 were rejected and without even assigning Id. numbers to them, he stated You can appeal the rejection.

(68) Rains realized that Hamel was trying to deny him access to the courts so he filed the grievances anyway.

(69) On December 2, 2019 Rains grieved the fact that medical and the dietician were **forcing him to eat food that was making him physically ill when he ate it** AMF 19-12-2403-12H1.

(70) The response in essence was for Rains to continue eating the same food that was making him ill, because nothing would be done about the problem.

(72) On appeal, Rains explained in his Step 2 that he was being treated inhumanely along with the lies being told in the response he received from medical.

(73) Rains filed a grievance on Hamel on December 4, 2019 for fighting against him with respect to the grievance system at every step of his (Rains) grievance process to try and deny him

access to the courts through the grievance process AMF 19-12-2440-28F. Hamels response was to tell Rains that he's on Modified Access.

(74) To date, Rains has not been able to receive any Step 2 grievance appeals and the issues he has brought up in these grievances persist.

(75) From June 25, 2019 Rains had been denied his right to properly and fully practice his religion by being denied the religious meal in accordance with policy and his beliefs.

(76) To date, Rains has been forced to eat meals and food items of another religion in violation of his religious belief.

(77) To date, Rains has been forced to eat meals and food items of another religion in violation of his religious belief and been denied the right to abstain from said food solely to maintain his mental and physical health, to which is deteriorating due to the fact that he must **abstain from SOY** because it makes him ill and is therefore not receiving the correct amount of nutrients needed to sustain his health.

(78) In 2013 the MDOC decided to substitute Vegan meals for the various religious diets provided to inmates (e.g. Kosher and Halal). Vegan meals contain no meat or dairy items.

(79) plaintiff asserts that the vegan diet violates his 1st AM Const. rights and his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) 42 USC 2000CC-1.

(80) Plaintiff has spent a significant amount of time in segregation at this facility where he is currently housed in segregation. Plaintiff is not allowed to order food items from the prison store. Even if Plaintiff was allowed to order food from the prison store in segregation, to supplement the lack of food on his Halal tray, he cannot have a job in segregation to earn funds

to purchase food. Plaintiff is totally dependent on the food that the MDOC provides on his Halal trays in order to survive and to follow his religious beliefs.

(81) Defendants Washington et. al; refusal to provide Rains with a proper Religious diet, adequate health care, and an alternative to a food that does not makes him physically ill and an opportunity to practice his religion are a violation to his rights under the Free Exercise Clause and Establishment Clause of the First Amendment, deliberate indifferent to his basic human and health needs and cruel and unusual punishment in violation of the eighth amendment, violation of the due process clause, equal protection clause and discrimination in violation of the fourteenth amendment and violations of the RLUIPA

## VI EXHAUSTION OF ADMINISTRATIVE REMEDIES

Pursuant to P.D. 03.02.130 and the PI-RA Plaintiff Rains used prisoner grievance procedure at AMF to try and resolve his claims before filing his lawsuit, to no avail, Plaintiff exhausted his grievances at all 3 steps except what has been impeded by Hamel. Plaintiff also references paragraphs 1 through 78, ante.

## LEGAL CLAIMS

### First Cause of Action

Plaintiff maintains that the MDOC'S policy of serving a vegan diet, in lieu of a Halal diet that includes meat and dairy, violates his sincere religious beliefs, and is in violation of the **RLUIPA** that protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the governments permission and accommodation for exercise of their religion; RLUIPA also protects any exercise of religion whether or not compelled by, or central to, system of religious beliefs 42 U.S.C. §2000cc-5(7)(A); This protection is not limited to beliefs which are shared by all members of a religious sect.; RLUIPA applies to the exercise of religion regardless of whether it is compelled. 42 U.S.C. §2000cc-5(7)(A).

### Second Cause Of Action

Defendants Health Care Staff are being deliberately indifferent. to Plaintiffs health and safety by refusing to treat Plaintiffs **SOY** allergy that is toxic and causing Plaintiff pain, suffering, physical injury and emotional distress in violation of the 8th AM to the US Const.

Defendants Health Care Staff are being deliberately indifferent to Plaintiff's and safety by refusing to issue a medical diet •to coincide with his Halal Trays to substitute another food for the soy food, thus depriving Plaintiff of his required daily calorie intake that is causing Plaintiff pain, suffering, physical and emotional injury in violation of the 8TH AM to the US const.

Defendants Health Care Staff are being deliberately indifferent to Plaintiffs Health and Safety in violation of the 8th AM to the US Const. when asserting that they do not accommodate food intolerances. In contrast, the record will show that Health Care does accommodate other food intolerances (e.g. onion and peanut intolerances)

19

Defendants Health Care Staff are subjectively aware of Plaintiffs Health Care issues by acknowledging Plaintiffs complaints about his vomiting and diarrhea whenever he eats SOY, but refuse to issue the medical detail to coincide with his Halal trays because of their cl aim that they do not accommodate food intolerances, for which is in violation of Plaintiffs 8th AM right to be free from cruel and unusual punishment.

### Third Cause of Action

Defendants are impeding and denying his Access to the Courts in violation of his First Amendment right, by rejecting grievances proclaiming that they are duplicates, placing Plaintiff on modified grievance access, denying Plaintiff to file grievances, and not investigating grievances, rubber stamping the first step response without any investigation, allowing violations to continue.

### Fourth Course of Action

Defendants are retaliating against Plaintiff for exercising his 1st AM rights to redress his grievances, where they are both impeding and denying Plaintiff to exhaust his administrative issues in order to proclaim that plaintiff has failed to exhaust his administrative remedies to get Plaintiffs claims kicked out of Court.

## PRAYER AND RELIEF

**WHEREFORE**, Plaintiff respectfully pray that this Court enter judgement:

(A) granting Plaintiff Rains a declaration that the acts and/or omissions described herein violates his rights under the constitution and laws of the United States; and

(B) granting Plaintiff $1,000 for each day he was denied his religious and constitutional rights; and

(C) granting Plaintiff compensatory damages in the amount of $ 25,000 against each defendant jointly and severally;

(D) granting Plaintiff punitive damages in the amount. of 50,000 against each defendant jointly and severally for his physical and mental anguish;

(E) granting certified Halal meals in accordance with Plaintiff's religious beliefs and practices;

(F) granting Plaintiff's request that no funds from this court's decision be used to pay debts Plaintiff owes the State and/or Federal courts and that all money awarded to Plaintiff as a result of this complaint be paid into his trust account;

(G) granting Plaintiff a jury trial on all issues triable by jury;

(H) granting Plaintiff recovery of his costs in this suit; and

(I) graningt any additional relief sought this court deems just, proper and equitable.

Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably harmed by the conduct of the defendants unless the Court grants the declaratory and injunctive relief Plaintiff seeks.

Respectfully Submitted,

**JAMES R. RAINS # 850436**
Baraga Correctional Facility
13924    Wadaga    Rd.
Baraga Michigan 49908

21

# VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged herein are true, except, as to matters alleged on information and belief, and, as to those, I believe them to be true, certify under penalty of perjury that the forgoing is true and correct 28 USC 1746(2).

JAMES R. RAINS # 850436
Baraga Correctional Facility
13924    Wadaga    Rd.
Baraga Michigan 49908




02 1P
0000888932          MAR 16 2020
MAILED FROM ZIP CODE 49908

$ 010.55⁰

the Count
District Count
t of Michigan

ing
N.W.
L 49503



**PRIORITY®**
**MAIL**
UNITED STATES POSTAL SERVICE

Visit us at usps.com

Label 107R, January 2008

James R. Rains #850456
Baraga Correctional Facility
13924 Wadaga Rd.
Baraga, MI 49908

Clerk of
United States
Western Dist
Federal Bu
110 Michigan
Grand Rapids



UNITED STATES
POSTAL SERVICE
USPS TRACKING #

9114 9014 9645 1539 4894 04

Label 400 Jan 2013
7690-16-000-7948