JAMES RAHEEM RAINS,

                  Plaintiff,

v.

HEIDI WASHINGTON et al.,

                  Defendants.

_____/

Case No. 2:20-cv-32

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant A. Jeffery. The Court will also dismiss Plaintiff's complaint for failure to state a claim against AMF Defendants Warden Daniel Lesatz; Deputy Warden Dennis Peterson; Food Service Director M. Callentine; Food Steward ("Cook") K. Minerick; Food Service Supervisors Hakola, Nelson, Jungek, Leionen, Collins, Hansvick, Johnson, Mulani, and Unknown Parties; and Grievance Coordinator T. Hamel. The Court will also dismiss Plaintiff's complaint

for failure to state a claim against MDOC Defendants Heidi Washington, Food Service Contract Manager Unknown Party, and Richard Russell.

Applying these standards the Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Deputy Director Unknown Party, Special Activities Coordinator Steve Adamson, Dieticians Patricia Willard and Kelly Wellman, Health Unit Manager Gloria Hill, Health Unit Supervisor Jamie Monville, and Nurse Patricia Lamb: Plaintiff's free exercise and RLUIPA claims relating to the ten-month delay in obtaining approval to participate in the Halal diet, the specific foods served at particular meals, and the fact that the Halal diet at the prison is vegan; claims for violation of Plaintiff's rights under the Establishment Clause; claims for violation of Plaintiff's due process rights; claims for violation of Plaintiff's equal protection rights; and claims for violation of the Plaintiff's First Amendment right to access the courts.

Plaintiff's claims that the Free Exercise Defendants violated his First Amendment free exercise rights, RLUIPA rights, and Eighth Amendment rights by refusing to accommodate Plaintiff's soy allergy remain.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues MDOC Director Heidi Washington; Deputy Director Unknown Party #1; Special Activities Coordinator Steve Adamson; Food Service Contract Manager Unknown Party #2; Health Unit Manager Gloria Hill; Grievance Manager Richard D. Russell; Nurse Patricia Lamb; and Dieticians Patricia Willard and Kelly Wellman.  Plaintiff sues AMF Warden Daniel Lesatz; Deputy Warden Dennis Peterson; Grievance

2

Coordinator T. Hamel; Food Service Director M. Callentine; Food Service Supervisors Unknown Hakola, Unknown Nelson, Unknown Jungek, D. Leionen; Unknown Collins, Unknown Hansvick, Unknown Johnson, Unknown Mulani, and Unknown Parties; Food Steward K. Minerick; and Health Unit Supervisor Jamie Monville. Plaintiff lists in the caption of his complaint Defendant A. Jeffery; but, Plaintiff does not identify Jeffery in the body of his complaint nor does he reference Jeffery in any factual allegations. Plaintiff sues all Defendants in their individual and official capacities.

Plaintiff alleges that he arrived at AMF during November of 2017. During June or July of 2018, Plaintiff asked to be placed on the Halal diet because he is a practicing Muslim. On August 28, 2018, Plaintiff was approved for the Halal trays. Apparently, however, neither Plaintiff nor the AMF food service was made aware of the approval for months. On June 16, 2019, Plaintiff filed a grievance because he had not received his Halal trays. Chaplain Snyder explained the Plaintiff had been approved almost a year earlier. The delay in providing Plaintiff the trays or at least notice that he had been approved was not explained. Nonetheless, having identified the failure, Plaintiff started to receive his Halal diet trays.

After a few days, Plaintiff was dissatisfied with his Halal diet trays for several reasons: (1) the food on the trays was not proportionate to the food on the regular trays; (2) the food was half-cooked or uncooked; (3) the food tasted as if it was spoiled; (4) the food did not include items he should have been receiving, i.e., dairy, fish, and meat; instead, it was all vegan. Plaintiff grieved these issues to no avail.

Plaintiff also complained that the soy menu items caused him stomach problems. In the process of resolving his grievances, he was informed that the soy issue was a healthcare issue, not a religious issue, and that he should direct his concerns regarding soy to healthcare.

Healthcare personnel provided Plaintiff with antacid. Plaintiff grieved the issue. The grievance responses indicate that Plaintiff complained he had vomited when he was provided the soy menu items. He was scheduled to see the medical provider, but the provider downplayed the problem at the appointment. Plaintiff claims the healthcare worker who scheduled the appointment indicated Plaintiff's problem was acid reflux and the doctor would only see Plaintiff for acid reflux. Because Plaintiff did not concur that the problem was acid reflux, the doctor would not help him or even examine him. The grievance response also indicates that Plaintiff's weight was stable or increasing on the Halal diet. Plaintiff does not challenge that fact.

Plaintiff then details problems with his Halal trays for some meals during October and November 2019. Plaintiff filed grievance after grievance about the food. Plaintiff has attached to the complaint as exhibits his grievances and the responses. Because of the frequency of his grievance filings and because they were deemed duplicative, Plaintiff was placed on modified access to the grievance remedy.

Plaintiff complains that he has no ability to buy his own food because he is often in segregation and, for that reason, cannot work a prison job. He is entirely dependent on the MDOC for nutrition. He claims that he is allergic to soy and that the MDOC offers no nutritionally adequate Halal diet that does not include soy. He contends that healthcare personnel will not recognize his allergy and authorize an alternative diet that complies with his religious diet requirements.

Plaintiff raised the soy problem with Defendant Wellman (ECF No. 1-1, PageID.31), Defendant Hamel (*Id.*, PageID.30, 31), and Defendant Adamson (*Id.*, PageID.33). He raised it by way of general health care requests (*Id.*, PageID.44, 50; ECF No. 1-2, PageID.107; ECF No. 1-3, PageID.126-128, 144-145) and grievances (ECF No. 1-1, PageID.45-49, 56-57; ECF

No. 1-2, PageID.58-62, 76-81, 111-113; ECF No. 1-3, PageID.135-140, 146-150). Defendants Dieticians Patricia Willard and Kelly Wellman, Health Unit Manager Gloria Hill, Health Unit Supervisor Jamie Monville, and Nurse Patricia Lamb all played some role in rejecting Plaintiff's request for a modification of his diet to accommodate his soy allergy. These Defendants informed Plaintiff that his requests were rejected because the MDOC Diet Manual does not allow diet modifications to address individual food intolerances.

Plaintiff identifies several specific "causes of action" he is raising. First, Plaintiff claims that the MDOC policy of serving a vegan diet, in lieu of a Halal diet that includes meat and dairy, violates his sincere religious beliefs in violation of The Religious Land Use and Institutionalized Persons Act (RLUIPA). (Compl., ECF No. 1, PageID.19.) Plaintiff next complains that the "Health Care Staff" Defendants are deliberately indifferent to his serious medical needs. (*Id.*, PageID.19-20.) Plaintiff contends that Defendants are denying him access to the courts by placing him on modified access to grievance remedies. (*Id.*, PageID.20.) Finally, Plaintiff complains that Defendants, by impeding and denying his administrative remedies, are retaliating against him for exercising his First Amendment rights. (*Id.*) Plaintiff also includes in an introductory paragraph a list of additional potential constitutional violations: "denial of [Plaintiff's] right to free exercise clause, establishment clause in violation of the first amendment . . . due process clause; equal protection clause, and discrimination in violation of the fourteenth amendment . . . ." (*Id.*, PageID.2; see also PageID.18, ¶ 81.)

Plaintiff seeks declaratory relief stating that his rights have been violated as well as compensatory and punitive damages exceeding $1,500,000.00. Additionally, Plaintiff asks the Court to order Defendants to provide certified Halal meals in accordance with Plaintiff's religious beliefs and practices.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Defendant Jeffery

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Defendant Jeffery appears only in the list of Defendants in the caption of Plaintiff's complaint.  Plaintiff does not identify Defendant Jeffery in the body of his complaint; Plaintiff does not allege any facts regarding Defendant Jeffery; and Jeffery's role is not apparent from the exhibits.  Jeffery's name is mentioned in a grievance (ECF No. 1-1, PageID.56-57, 61); but, the grievance does not state what Jeffery did or did not do.  Accordingly, Plaintiff has failed to state a claim against Defendant Jeffery.

**IV.    First Amendment free exercise and RLUIPA**

Plaintiff claims that Defendants, by interfering with Plaintiff's religious diet, violated his rights under the First Amendment and RLUIPA. The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely-held religious beliefs and there is no doubt that the practice of following a Halal diet is a religious practice. The next consideration is "whether the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821 F.2d at 1224-25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627

F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. ""[A] 'substantial burden' must place more than an inconvenience on religious exercise.'" *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult . . . ." *Id.*

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).

The phrase "substantial burden" is not defined in RLUIPA. The Sixth Circuit Court of Appeals has relied upon the Act's legislative history to conclude that the term has the same meaning under RLUIPA as provided by the Supreme Court in its "free exercise" decisions. *Living Water*, 258 F. App'x at 733-34. Accordingly, a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citations omitted); *Cutter v. Wilkinson,* 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on

religious exercise); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable")).

A burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise," *see, e.g., Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005), or does not "pressure the individual to violate his or her religious beliefs." *Living Water*, 258 F. App'x at 734. Such conclusions recognize that RLUIPA was not intended to create a cause of action in response to every decision which serves to inhibit or constrain religious exercise, as such would render meaningless the word "substantial." *See Civil Liberties for Urban Believers*, 342 F.3d at 761.

Under the First Amendment or under RLUIPA, Plaintiff must allege that his religious exercise has been substantially burdened. Plaintiff's contends that his religious exercise has been substantially burdened because he was forced to choose between religious adherence and an adequate diet because: (A) notice of the approval of his religious diet request was delayed by ten months; (B) the food was served in inadequate portions, was undercooked, or was not as represented on the menu; (C) the diet was vegan and did not include dairy, meat or fish, as permitted by Plaintiff's religious diet; and (D) the diet depended on the presence of soy to be nutritionally adequate, and Plaintiff is allergic to soy.

### A. 10-month delay

Plaintiff's allegations regarding the 10-month delay read, in their entirety, as follows:

On June 16, 2019, Plaintiff filed a grievance, grieving the fact that, having kited to be placed on Halal trays [in June or July of 2019], he still hadn't received his trays, nor a response to the test he[ had] taken to be placed on the Halal diet. AMF 19-061289-20E. On June 20, 2019, the Chaplain reviewed the grievance with Plaintiff Rains, telling him that he had been approved for the Halal trays since August 28,

2019, and should have been receiving them. Chaplain Snyder also told Rains that he should get them as notification reached the right individuals. When Plaintiff asked why it had taken 10 months and a grievance to receive his trays, the Chaplain could not give an answer, nor could any other staff.

On June 24, 2019, Plaintiff Rains filed a grievance on the fact that for 10 months he was denied the opportunity to practice his religion by receiving his Halal trays and no one could explain why. AMF 19-06-1367-20E. It was rejected as a duplicate.

(Compl., ECF No. 1, PageID.7.)

It is not at all clear that Plaintiff intended to raise this delay as a substantial burden on the free exercise of his religion. It is not specifically mentioned in his "causes of action." (*Id.*, PageID.19-20.) Nonetheless, the delay put Plaintiff in the position of choosing between religious adherence or adequate nutrition for an extended period of time. Accordingly, the delay would appear to have substantially burdened his religious practice. Even if the delay substantially burdened Plaintiff's religious practice, however, Plaintiff has failed to allege that the delay was the product of an intentional act by any named Defendant.

The MDOC policy regarding religious menus provides:

The Department offers a vegan menu to meet the religious dietary needs of prisoners . . . . A prisoner may eat from a Vegan menu only with approval of the CFA Special Activities Coordinator. Approval shall be granted only it if is necessary to the practice of the prisoner's designated religion, including the prisoner's sincerely held religious beliefs. To request approval, the prisoner must submit a written request to the Warden or designee, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator. The CFA Special Activities Coordinator shall notify the Warden or designee of the decision. The Warden shall ensure that the prisoner is notified. . . . A prisoner approved to eat from a religious menu shall be provided appropriate meals within a reasonable time after the approval.

MDOC Policy Directive 05.03.150, Religious Beliefs and Practices of Prisoners, ¶¶ OO, PP, QQ (eff. 10/1/2019). Plaintiff alleges that he made the written request; the chaplain apparently obtained the information and forwarded it on to the CFA Special Activities Coordinator, Defendant

Adamson; and then Defendant Adamson approved the request. But, the complaint does not disclose what happened after that. Perhaps Defendant Adamson failed to convey the approval to Defendant Warden Daniel Lesatz or the chaplain—who is not a defendant. Perhaps Defendant Lesatz failed to "ensure that the prisoner [was ] notified." Perhaps the breakdown in the system was intentional or perhaps it was accidental.

Whether or not the resulting burden was a constitutional violation, however, depends on whether or not it was intentional. It is well established that negligent conduct will not state a constitutional claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) (holding that the protections of the Due Process Clause of the constitution are not "triggered by a lack of due care by prison officials.") (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner . . . ."), and *Baker v. McCollum*, 443 U.S. 137, 1464 (1979) (holding that false imprisonment does not violate the Fourteenth Amendment simply because the defendant is a state official). Numerous courts have recognized that a prison official's negligent interference with a prisoner's religious diet does not violate the constitution. *See Colvin v. Caruso,* 605 F.3d 282, 293-94 (6th Cir. 2010) (holding that isolated incidents of negligence by prison officials in implementing kosher food requirements is not actionable under the First Amendment); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (isolated acts of negligence in providing kosher diet do not support a free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.") (citing *Daniels*, 474 U.S. at 330)).

Because "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause," *Lovelace*, 472 F.3d at 201, and because Plaintiff's

allegations do not indicate that the denial here was intentional, the allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." *Iqbal*, 556 U.S. at 679. That is insufficient to state a claim for violation of his First Amendment or RLUIPA rights.[1]

**B.**      **Inadequate portions, undercooked food, and food that is inconsistent with the menu**

Plaintiff complained that some of the food he received on the Halal diet was half-cooked or uncooked, tasted bad, was different than the offering shown on the menu, or provided smaller portions than the regular diet. Plaintiff describes specific incidents in his complaint and the grievances attached to his complaint. Plaintiff's complaints regarding specific meals are isolated and sporadic when considered over the months he has been served the Halal diet. "Isolated acts or omissions, however, do not constitute a substantial burden on religious freedom." *Mubashshir v. Moore*, No. 3:10-cv-2802, 2011 WL 1496670, at *6 (N.D. Ohio Apr. 19, 2011) (collecting cases); *see also Colvin*, 605 F.3d at 293-294 (court held that "isolated incidents of . . . serving . . . nonkosher food" with no showing of intent were "not sufficient to sustain his [free exercise] claim . . . ."); *Pleasant-Bey v. Tenn. Dep't or Corr.*, No. 18-5424, slip op. at 6-7 (6th Cir. Apr. 4, 2019) (five instances of late meal deliveries during Ramadan that deprived the plaintiff of eating those meals and one day of no meals at all was not a substantial burden). Plaintiff's allegations regarding specific meals do not support the inference that the free exercise of his religion was substantially burdened. Therefore, he has failed to state a First Amendment or RLUIPA claim based on those meals.

---

[1] *See, e.g., Colvin v. Horton*, No. 2:19-cv-122, 2019 WL 3927425, at *6 (W.D. Mich. Aug. 20, 2019) (collecting cases concluding that negligent conduct does not suffice to be actionable under RLUIPA).

## C. Vegan menu

Plaintiff complains that a Halal diet may include dairy, meat, and fish. Plaintiff does not contend that his religious beliefs require him to eat the dairy and meat products that are missing from the MDOC vegan religious diet. Nor does Plaintiff contend that the MDOC vegan religious diet requires him to eat anything that is not permitted by his religious beliefs. His complaint, essentially, is that his religious beliefs permit him to eat certain foods that the MDOC will not supply to him. That does not rise to the level of a First Amendment Free Exercise Clause or an RLUIPA violation.

The Sixth Circuit Court of Appeals and this Court have rejected the proposition that serving a Halal vegan meal to inmates constitutes a substantial burden on Muslim beliefs. *Robinson v. Jackson*, 615 F. App'x 310, 313-314 (6th Cir. 2015); *Davis v. Heyns*, No. 1:15-cv-19, 2017 WL 762401 (W.D. Mich. Feb. 28, 2017); *Hudson v. Caruso*, 748 F. Supp. 2d 721, 729-730 (W.D. Mich. 2010). The *Robinson* panel explained:

> Under the First Amendment, inmates have the right to the free exercise of their religion. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). However, . . . Robinson is receiving meals that do not violate his religion. And while he may prefer to be served "[H]alal meat entrees rather than vegetarian entrees and non-meat substitutes, his food preferences, as a prisoner, are limited." *Cloyd*, 2012 WL 5995234, at *4; *see also Rhodes v. Chapman*, 452 U.S. 337, 349 (1981) ("The Constitution does not mandate comfortable prisons."). Prisoners have a constitutional right to meals that meet their nutritional needs; indeed, they have a constitutional right to be served meals that do not violate their sincerely-held religious beliefs. *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010). But there is no constitutional right for each prisoner to be served the specific foods he desires—such as Halal meat—in prison. *See Spies v. Voinovich*, 173 F.3d 398, 406-07 (6th Cir. 1999) (holding that providing a Buddhist prisoner with a vegetarian diet but not a vegan diet was constitutionally permissible, and "the fact that Plaintiffs dislike the alternate diet available does not render it unreasonable or legally deficient.").
>
> We therefore agree with the district court that Robinson has not presented "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" for the simple reason he alleges no specific misconduct. *Iqbal*, 556 U.S. at 678.

*Robinson*, 615 F. App'x at 314. Accordingly, Plaintiff's allegations that the religious menu is vegan do not demonstrate a substantial burden on the free exercise of his religion.

### D. Soy allergy/intolerance

Accepting as true Plaintiff's allegations regarding his soy allergy/intolerance, he must choose one of three options: (1) abandon his religious diet practices; (2) endure gastro-intestinal discomfort including diarrhea, vomiting, and stomach pain; or (3) have less than adequate nutrition from his religious diet.[2] That would appear to be precisely the type of pressure that substantially burdens the free exercise of his religious practice. Accordingly, with respect to his problem with soy, Plaintiff has stated a claim for violation of his free exercise and RLUIPA rights.

Plaintiff attributes all of the constitutional violations he has suffered to "Defendants" as a group. But, the factual allegations in his complaint make clear that not every Defendant has played an active role in every alleged violation of his religious rights. Focusing on his only viable free exercise and RLUIPA claim—the refusal to accommodate his soy intolerance/allergy—substantially narrows the field of potentially liable Defendants. Moreover, differences between the § 1983 and RLUIPA remedies impact whether Plaintiff may pursue relief against the potentially liable Defendants in their personal capacities, their official capacities, or both.

### 1. Free exercise/soy Defendants (§ 1983)

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff's complaint, therefore, begs the question: who is responsible for the content of the Halal menu?

---

[2] It may be that Plaintiff could forego the soy options on the vegan menu and still enjoy adequate nutrition; however, his allegations, construed liberally and accepted as true, suggest that is not the case.

The general requirements for MDOC food service are set forth in MDOC Policy Directive 04.07.100 (Eff. Oct. 1, 2019).[3]  Those requirements include three meals a day and hot food for two of those meals.  *Id.*, ¶G.  All menus and all meals must satisfy the nutritional and caloric recommendations set forth in the dietary reference intakes approved by the National Research Council and menu planning must follow "The Dietary Guidelines for Americans."  *Id.*, ¶ H.  The Food Services Program Manager is responsible for issuing standardized regular diet menus to be used at all MDOC correctional facilities.  Id., at ¶ J.  The standard menu must be used to feed all offenders at a facility, unless there is an emergency.  Id. at ¶ I.  The food service policy identifies two other types of diets other than the regular diet: therapeutic diets, as described in MDOC Policy Directive 04.07.101; and religious diets, as described in MDOC Policy Directive 05.03.150.

The religious diet menu is the vegan menu.  It includes soy.  The policy does not explain who developed the religious diet menu; but, it provides: "An alternative menu will be developed and provided only with approval of the Deputy Director and only if it is determined that the Vegan menu does not meet the religious dietary need of the prisoner."  *Id.*, at ¶ OO.  The religious diet policy does not provide for changes to the religious diet menu other than changes necessary because the vegan menu does not meet the *religious* requirements of the prisoner.

The only other possible diet change referenced in the policy manual is the therapeutic diet.  With regard to therapeutic diets, the policy directive provides:

> The Administrator of the Bureau of Health Care Services (BHCS) or designee shall maintain a Diet Manual identifying criteria for prescribing and providing therapeutic diets, specific to the MDOC needs.  The MDOC diet manual is researched and written by the BHCS Registered Dietitians.  This manual provides

---

[3] Plaintiff references certain MDOC policy directives in his complaint and other policy directives are referenced in the exhibits to the complaint.

a guideline for circumstances under which therapeutic diets are to be ordered and medical nutritional services are to be provided.

To comply with existing standards of health care, all therapeutic diets shall be ordered by the MP or dentist based on guidelines set forth in the MDOC Diet Manual. The menus for therapeutic diets will be written by BHCS Registered Dietitians in accordance with the MDOC Diet Manual. Therapeutic diet orders will be reviewed by BHCS Registered Dietitians to ensure appropriateness and make recommendations based on the guidelines of the MDOC Diet Manual. All therapeutic diets will be served as prescribed in the Prisoner Health Record (PHR) by the MP or dentist and in accordance with the MDOC Diet Manual and PD 04.07.100 "Offender Meals and Food Quality Assurance."

*    *    *

Menu options such as vegetarian, pork-free or other dietary variances that are requested for religious or personal (non-medical) reasons are not therapeutic diets and should not be ordered as such.

MDOC Policy Directive 04.07.101, ¶¶ G, H, M. (Eff. Sept. 1, 2018). The policy directive makes clear that the preparation and service of the food is the responsibility "of Food Service within each institution" but the food is to be "prepared and served according to the therapeutic diet menus as written by [Bureau of Health Care Services] Registered Dieticians." *Id.*, at ¶¶ P, Q.

Based upon these policy directives, and the absence of any allegations in Plaintiff's complaint to the contrary, there are no facts alleged in Plaintiff's complaint that support an inference that the AMF personnel, specifically Warden Daniel Lesatz; Deputy Warden Dennis Peterson; Food Service Director M. Callentine; Food Steward ("Cook") K. Minerick; Food Service Supervisors Hakola, Nelson, Jungek, Leionen, Collins, Hansvick, Johnson, Mulani, and Unknown Parties; and Grievance Coordinator T. Hamel played an active role in requiring soy in the vegan diet in the first instance or refusing to change the diet to exclude soy.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556

F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that the above-listed AMF personnel participated in active unconstitutional behavior with regard to his claimed free exercise violation. Accordingly, Plaintiff has failed to state a claim for violation of his free exercise rights against those Defendants.

Similarly, there is nothing in the policy directives or Plaintiff's factual allegations that support the inference that MDOC Director Heidi Washington, Food Service Contract Manager Unknown Party, or MDOC Grievance Manager Richard D. Russell played any role in creating the religious diet vegan menu that depends upon soy or denying Plaintiff an alternative that satisfies the requirements of a Halal diet. With regard to Heidi Washington, Plaintiff alleges only that she is "legally responsible for the operations of all [MDOC] prisons[,] oversees all of the prisons, and the welfare of all its inmates." (Compl., ECF No. 1, PageID.3.) Plaintiff wrote letters to Defendant Washington regarding the religious diet issues; however, she did not respond. Therefore, Plaintiff has failed to allege that Defendant Washington participated in active unconstitutional behavior with regard to his claimed free exercise violation.

Nor does Plaintiff allege that Defendant Russell participated in active unconstitutional behavior. Indeed, a review of Plaintiff's complaints and exhibits indicates that Russell's only involvement in any of these matters is his denial of administrative grievances at the third step of the grievance process. That is not sufficient to state a claim against him.

Finally, with regard to Defendant Food Service Contract Manager Unknown Party, Plaintiff alleges he or she is "legally responsible . . . over All food service contracts." (Compl., ECF No. 1, PageID.3.) There are no allegations in the complaint, or the MDOC policy directives, or Plaintiff's exhibits to support an inference that the contract manager plays any role in the creation of the religious Halal diet or the approval of deviations from it. Therefore, Plaintiff has failed to state a claim for violation of his First Amendment free exercise rights against the contract manager.

According to Plaintiff's allegations, the exhibits attached to his complaint, and the policy directives referenced therein, the Defendants that remain—Deputy Director Unknown Party, Special Activities Coordinator Steve Adamson, Dieticians Patricia Willard and Kelly Wellman, Health Unit Manager Gloria Hill, Health Unit Supervisor Jamie Monville, and Nurse Patricia Lamb—played some role in either the creation of the religious vegan diet or the denial of a deviation from it in Plaintiff's case.[4] Accordingly, Plaintiff's allegations suffice to state claims against those Defendants for violation of Plaintiff's First Amendment free exercise rights.

---

[4]Dieticians Patricia Willard and Kelly Wellman, Health Unit Manager Gloria Hill, Health Unit Supervisor Jamie Monville, and Nurse Patricia Lamb (herein the "Healthcare Defendants"), either rejected Plaintiff's request to deviate from the vegan diet because of his soy allergy or approved that decision as part of the grievance process. Although typically denial of an administrative grievance does not support § 1983 liability, in the context of reviewing a healthcare decision, consideration and denial of a grievance bears all the hallmarks of an independent healthcare decision. Accordingly, based on the nature of the grievance responses by the Healthcare Defendants, the Court concludes they have actively participated in the decision that gives rise to potential § 1983 liability.

Plaintiff sues these Defendants (herein collectively the "Free Exercise Defendants") in their personal and official capacities. He seeks damages as well as declaratory and injunctive relief. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989). Therefore, the Court will dismiss the suit for monetary relief against the Free Exercise Defendants in their respective official capacities.

Nevertheless, an official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law[.]" *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (citing *Will*, 491 U.S. at 71 & n.10). Therefore, Plaintiff's claims against the Free Exercise Defendants, in their respective personal ***and official*** capacities, for prospective declaratory or injunctive relief, may proceed.

## 2. RLUIPA Defendants

The analysis of Plaintiff's RLUIPA claim parallels the analysis of his free exercise claim. Because the only potentially substantial "free exercise" burden alleged by Plaintiff is the refusal to accommodate his soy intolerance/allergy, that is the only potentially substantial RLUIPA burden as well.

Plaintiff's complaint seeks damages, declaratory relief, and injunctive relief. He does not indicate which of his claims warrants each kind of relief. RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd Sossamon v. Texas*, 563 U.S. 277 (2011)[5]; *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[6] Therefore, Plaintiff's RLUIPA claims for damages, declaratory, or injunctive relief against the Free Exercise Defendants in their personal capacities is properly dismissed.

Moreover, RLUIPA does not permit damages claims against prison officials in their official capacities either. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore,

---

[5] The Supreme Court granted certiorari only on the question "Whether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[6] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id.* at 567-69. The court stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.

Sovereign immunity does not bar a suit seeking declaratory or injunctive relief against Defendants in their official capacities. *See Ex Parte Young*, 209 U.S. at 159-160. The *Ex Parte Young* exception, however, is limited. It applies only to prospective relief. *Green v. Mansour*, 474 U.S. 64, 68-73 (1985). Plaintiff seeks declaratory or injunctive relief that is prospective; therefore, his RLUIPA claim may proceed against the Free Exercise Defendants—the individuals that he has sufficiently alleged have substantially burdened his religious practices—in their official capacities.

## V.    Establishment Clause

The Establishment Clause of the First Amendment prohibits the enactment of any law "respecting an establishment of religion." U.S. Const. amend. I. "'The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.'" *Maye v. Klee*, 915 F.3d 1076 1084 (6th Cir. 2019) (quoting *Larson v. Valente*, 456 U.S. 228, 244 (1982)). "[A]n official who 'confers [a] privileged status on any particular religious sect' or 'singles out [a] bona fide faith for disadvantageous treatment' violates the Establishment Clause." *Id.*, quoting *Cutter v. Wilkinson*, 544 U.S. 709, 724 (2005).

Plaintiff mentions the Establishment Clause in his complaint, twice (Compl., ECF No. 1, PageID.2, 18), but he does not explain how Defendants have preferred or disadvantaged one religious denomination over another. The facts alleged by Plaintiff do not support an inference that Defendants have preferred or disadvantaged one religious denomination over another. Certainly, the MDOC and Defendants differentiate between religions that have dietary restrictions and religions that do not, but that does not appear to support any claim under the Establishment Clause. Indeed, arguably, the religions preferred by the MDOC's religious diet policy would be

the religions whose special dietary needs are accommodated, including Plaintiff's. If Plaintiff's religion is preferred, he cannot show injury. Moreover, the relief Plaintiff seeks is that his religious diet be accommodated even more specifically. That too would put Plaintiff's religion in the preferred status, the result the Establishment Clause is intended to avoid. Accordingly, even accepting Plaintiff's allegations as true, he has failed to state a claim for violation of his Establishment Clause rights.

## VI. Due process and access to the courts

Plaintiff mentions due process three times in his complaint, twice in general descriptions of his claims (Compl., ECF No. 1, PageID.2, 18), and once in complaining about the processing of his grievances (*Id*., PageID.11). The Court concludes, therefore, that Plaintiff's due process claim is comprised of: (1) his complaint that Defendants failed to respond to his grievances to his satisfaction and (2) his complaint that Defendant Hamel put Plaintiff on modified access to the grievance remedy and then refused to permit Plaintiff to file grievances. It appears that Defendant Hamel's rejection of Plaintiff's grievances also lies at the heart of Plaintiff's claim that he was denied access to the courts.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No.

93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Petitioner's right to petition government is not violated by Defendant's failure to process or act on his grievances.  The First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).  Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972).  "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)).  Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977).  The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner

is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim for violation of his due process rights or his right to access the courts.

## VII.    Equal protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Plaintiff alleges that his equal protections rights have been violated, but his allegations are conclusory. They consist of nothing more than a statement that his equal protection rights have been violated. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Plaintiff's factual allegations do not implicate his equal protection rights. An "equal protection" plaintiff must be treated differently to similarly situated comparators. Those comparators must be similarly situated "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505

U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff brining an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff is being treated differently than other inmates and the differing treatment is based on religion. Therefore, the different treatment is premised on a protected right. But, Plaintiff is not being treated differently than inmates from other religions with dietary restrictions because, under the MDOC policy, all religions with dietary restrictions are treated the same. And, though Plaintiff is being treated differently than inmates from other religions that do not have dietary restrictions or from inmates that do not practice any religion, it is only because he asked to be treated differently. He asked to receive a Halal diet. For those reasons, the Sixth Circuit has rejected the claim Plaintiff presents: that a vegan diet violates equal protection rights. *See Davis v. Heyns*, No. 17-1268, 2017 WL 8231366, at *4 (6th Cir. Oct. 16, 2017) ("He is not being treated disparately from similarly situated prisoners; the vegan meal available to him is the same meal that is available to Jewish and Buddhist prisoners, and it is halal. All of the prisoners are provided with meals that comport with the dietary restrictions of multiple faiths.") (internal citation omitted).

Plaintiff also claims that he is being treated differently as a person who is allergic to, or intolerant of, soy. That different treatment does not burden a fundamental right, nor does it target a suspect class—persons allergic or intolerant of soy are not a suspect class. Therefore, to state an equal protection claim on that ground, Plaintiff must demonstrate that he is intentionally treated differently than others similarly situated without any rational basis for the difference.

*Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

Plaintiff posits that inmates with peanut or onion allergies/intolerances are treated differently. He claims their requests for diet modifications are granted; but, he does not identify a single such prisoner. *Bertovich v. Vill. of Valley View*, 431 F. App'x 455, 458 (6th Cir. 2011) (Court affirmed dismissal of "class of one" equal protection claims where Plaintiff "[did] not point to any individual who was treated differently . . . ."); *see also Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals . . . ."); *Sanders v. City of Hodgenville*, 323 F. Supp. 3d 904, 911 (W.D. Ky. 2018) ("Sander's class-of-one claim fails as a matter of law . . . Sanders fails to identify any similarly situated individual who was treated differently.").

For all of these reasons, therefore, Plaintiff has failed to state a claim for violation of his equal protection rights.

## VIII.   First Amendment retaliation

Plaintiff contends Defendants are retaliating against him for filing grievances by impeding his access to the grievance remedy, in violation of Plaintiff's First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff sufficiently alleges the first prong of the retaliation standard. The filing of a non-frivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

However, Plaintiff's claim fails at the second step, because he does not allege actions that are sufficiently adverse. Plaintiff's claim appears to be directed solely at Defendant Hamel's placement of Plaintiff on modified access to the grievance remedy and Hamel's refusal to permit Plaintiff to pursue certain grievances once Plaintiff's access was modified.

The Sixth Circuit repeatedly has held that placement on modified grievance access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001). Placement on modified access would not deter a person of ordinary firmness from continuing to engage in protected conduct, because modified-access status does not impair the ability to file civil rights actions in federal court. Title 42 U.S.C. § 1997e(a), which requires prisoners to exhaust their administrative remedies before coming to federal court only requires the exhaustion of "such administrative remedies as are available." *See Kennedy*, 20 F. App'x at 471. If a prisoner has been placed on modified access to the grievance procedure and attempts to file a grievance which is deemed to be non-meritorious, he has exhausted his "available" administrative remedies as required by § 1997e(a). *Id.*

For the same reasons that placement on modified grievance access does not amount to adverse action, an official's rejection of a grievance is not sufficiently adverse to state a retaliation claim. Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016) (rejection or denial of a grievance is not adverse); *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401 (W.D. Mich. May 6, 2015) (holding that the rejection of a grievance is not adverse action); *Ross v. Westchester Cty. Jail*, No. 10 Civ. 3937 (DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a single grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009) (the rejection or denial of prison grievances does constitute an adverse action for purposes of a retaliation claim). Plaintiff therefore fails to state a claim for retaliation in violation of the First Amendment.

## IX.    Eighth Amendment

Finally, Plaintiff contends that the Healthcare Defendants have violated his Eighth Amendment right to be free of cruel and unusual punishment by their deliberate indifference to his serious medical needs. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v.*

*Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Accepting Plaintiff's allegations as true—that his soy intolerance causes him stomach pain, vomiting, and diarrhea, the Healthcare Defendants are aware of Plaintiff's soy intolerance, the religious diet includes an abundance of soy, and the Healthcare Defendants refuse to alter Plaintiff's diet to accommodate his soy intolerance—Plaintiff's allegations suffice to state a claim for violation of his Eighth Amendment rights against the Healthcare Defendants.

## X.    Preliminary injunctive relief

Also pending before the Court is Plaintiff's motion for a temporary restraining order and preliminary injunction.  (ECF No. 7.)  Plaintiff asks the Court to enter an order directing Defendants to substitute other halal compliant calories for the soy calories in his present vegan diet.

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)).  The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.  *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers.  *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *National Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same).  Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).  The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and

drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has adequately stated claims against the Free Exercise Defendants for violation of his First Amendment free exercise and RLUIPA rights and against a smaller subset of defendants—the Healthcare Defendants—for violation of his Eighth Amendment rights. But, adequately stating a claim is not the same thing as showing a strong likelihood of success on the merits.

Plaintiff's likelihood of success on the merits depends in part on the severity of his soy intolerance. That affects the substance of the burden imposed on his religious practice and the seriousness of his medical need. The documents Plaintiff submits along with his complaint, however, at least suggest that Plaintiff gained weight on the diet he allegedly cannot tolerate and did not suffer significant symptoms for the first few months he was on the diet. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, Plaintiff's allegations fail to demonstrate irreparable harm that is avoidable by a preliminary injunction. Plaintiff has survived, and possibly even thrived, on the allegedly intolerable diet for many months. Moreover, the documents he attaches to his complaint indicate that the religious vegan diet supplies more calories than adequate nutrition demands. Plaintiff's

allegations do not foreclose the possibility that Plaintiff might be able to forego the offending soy menu items yet still maintain adequate nutrition.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary relief will be denied.

## XI.    Appointment of counsel

Plaintiff has requested a court-appointed attorney. (ECF No. 3.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel will, therefore, be denied.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants A. Jeffery; Warden Daniel Lesatz; Deputy Warden Dennis Peterson; Food Service Director M. Callentine; Food Steward ("Cook") K. Minerick; Food Service Supervisors Hakola, Nelson, Jungek, Leionen, Collins, Hansvick, Johnson, Mulani, Unknown Parties; Grievance Coordinator T. Hamel; MDOC Director Heidi Washington, Food Service Contract Manager Unknown Party, and Richard Russell will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss, for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the following claims against the remaining Defendants: official capacity claims for damages; personal capacity RLUIPA claims; claims for violation of Plaintiff's free exercise and RLUIPA rights relating to the ten-month delay in obtaining approval to participate in the Halal diet, the specific foods served at particular meals, and the fact that the Halal diet is vegan; claims for violation of Establishment Clause rights; claims for violation of due process rights; claims for violation of equal protection rights; claims for violation of the First Amendment right to access the courts; and claims for retaliation in violation of the First Amendment.

The claims that remain are: (1) Plaintiff's Eighth Amendment claims against the Healthcare Defendants (Dieticians Patricia Willard and Kelly Wellman, Health Unit Manager Gloria Hill, Health Unit Supervisor Jamie Monville, and Nurse Patricia Lamb) in their respective personal capacities for damages, declaratory, and injunctive relief and in their respective official capacities for prospective declaratory and injunctive relief; (2) Plaintiff's free exercise claims relating to refusal to accommodate his soy allergy against the Free Exercise Defendants (the Healthcare Defendants plus Deputy Director Unknown Party and Special Activities Coordinator

Steve Adamson) in their respective personal capacities for damages, declaratory, and injunctive relief and in their respective official capacities for prospective declaratory and injunctive relief; and (3) Plaintiff's RLUIPA claim relating to refusal to accommodate his soy allergy against the Free Exercise Defendants in their respective official capacities for prospective declaratory and injunctive relief.


Dated:   April 10, 2020                          /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 United States District Judge