UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


JAMES RAHEEM RAINS, #850456,                    Case No. 2:20-cv-32

               Plaintiff,                    Hon. Paul L. Maloney
                                           U.S. District Judge

     v.

HEIDI WASHINGTON, et al.,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment based on Plaintiff's failure to exhaust (ECF No. 43), and Plaintiff's motion for a temporary restraining order (TRO) and preliminary injunction (ECF No. 37).

Plaintiff in this case — state prisoner James Raheem Rains — initiated this suit pursuant to 42 U.S.C. § 1983 on March 12, 2020.  In his verified complaint, Rains, a practicing Muslim, alleged that while he was confined at Baraga Correctional Facility (AMF) in Baraga, Michigan, various AMF employees acted with deliberate indifference and violated the Free Exercise Clause, the Religious Land Use and Institutionalized Persons Act (RLUIPA), the Establishment Clause, and the Equal Protection Clause by providing him with inadequate Halal food trays, forcing him to conform to a vegan diet, and refusing to accommodate his soy intolerance.  He also

alleged that he was retaliated against in violation of his First Amendment rights, denied due process of law, and denied access to courts.

Following this Court's April 10, 2020 Opinion (ECF No. 11) and Order (ECF No. 12), two sets of claims remain: (1) First Amendment free exercise and RLUIPA claims for failing to accommodate Rains's soy intolerance, thereby forcing him to choose between his religious meal and his health, and (2) Eighth Amendment deliberate indifference claims for failing to treat Rains's soy intolerance.

The First Amendment Defendants are: (1) Deputy Director (DD) Bush,[1] (2) Special Activities Coordinator (SAC) Adamson, (3) Dietician Willard, (4) Dietician Wellman, (5) Health Unit Manager (HUM) Hill, (6) Health Unit Supervisor (HUS) Monville, and (7) Registered Nurse (RN) Lamb.  The Eighth Amendment Defendants are: (1) Dietician Willard, (2) Dietician Wellman, (3) HUM Hill, (4) HUS Monville, and (5) RN Lamb.

Defendants now move for summary judgment on all but Rains's claims against Dietician Wellman based on exhaustion.  (ECF No. 44.)  Specifically, Defendants argue that Rains pursued only two grievances concerning his soy intolerance through Step III of the grievance process, and the only grievance denied at all steps and therefore properly exhausted concerned only Dietician Wellman.  (*Id.*, PageID.405.) Rains did not respond.  Rains has, however, moved for a temporary restraining order and preliminary injunction (ECF No. 37) for the second time (*see* ECF No. 7).

---

[1]    While the Court identified this party as "Deputy Director Unknown," Defendants have since identified the party as Jeremy Bush.  (ECF No. 44, PageID.396.)

The undersigned respectfully recommends that this Court: (1) grant summary judgment with regards to DD Bush, HUM Hill, HUS Monville, and RN Lamb, (2) deny summary judgment with regards to SAC Adamson and Dietician Willard, and (3) deny Rains's motion for injunctive relief.  There is a genuine issue of material fact concerning whether Rains's grievance against Adamson and Willard was properly rejected as duplicative, and Defendants are therefore not entitled to judgment as to those claims.  However, there are no genuine issues of material fact concerning Rains's failure to exhaust his claims against Bush, Hill, Monville, and Lamb.  The record before the Court shows that Rains did not exhaust those claims.  Finally, Rains's requests in his motion for injunctive relief are either unrelated to the claims in this case, or not adequately supported by a showing that Rains is substantially likely to succeed on the merits.

## II.    Factual Allegations

Rains is a practicing Muslim currently incarcerated at AMF. (ECF No. 1, PageID.6.)  In August of 2018, Rains was approved to receive Halal food trays in accordance with his religious beliefs.  (*Id.*, PageID.7.)

On October 2, 2019, Rains sent a medical kite[2] for the first time complaining that the soy included in his Halal food tray was causing him gastrointestinal distress.  (*Id.*, PageID.8.)  Rains was subsequently put on a medical callout, during which he explained to the nurse that he was enduring vomiting, stomach pains, and diarrhea

---

[2]    "A 'kite' is a written communication by a prisoner to request services from prison staff, including medical care." *Colen v. Corizon Med. Servs.*, No. CV 14-12948, 2017 WL 8683318, *1 n.4 (E.D. Mich. Aug. 15, 2017).

from consuming soy.  (*Id.*)  The nurse said that Rains was experiencing acid reflux, despite Rains making no mention of acid reflux.  (*Id.*)

On October 16, 2019, Rains submitted another medical kite complaining of issues he was experiencing due to the soy included in his food tray.  (*Id.*, PageID.9.)  On October 18, 2019, he was called out to see a doctor, who told Rains he was only being seen for acid reflux.  (*Id.*)

On October 25, 2019, Rains submitted his first grievance, <u>AMF-19-10-2195-12h3</u>, complaining that healthcare was not doing anything to address the gastrointestinal distress he was experiencing from consuming soy.  (*Id.*)    HUS Monville responded, denying the grievance because Rains had not submitted a kite regarding abdominal symptoms caused by soy intake, and because there was "no indication for therapeutic diet changes."  (*Id.*, PageID.9-10.)

On October 27, 2019, Rains sent letters to Adamson and Willard regarding the issues he was experiencing with the soy on his food tray.  (*Id.*, PageID.11.)  When Rains did not receive a response, he filed grievance <u>AMF-19-11-2271-28a</u>, which AMF Grievance Coordinator (GC) Hamel rejected as duplicative of <u>AMF-19-10-2136-20e</u>[3] even though the grievances were unrelated.  (*Id.*, PageID.12.)  The rejection was upheld at Steps II and III.  (*Id.*)  At this time, Rains began noticing that he was not receiving any responses to his communications, so he began retaining copies.  (*Id.*)

---

[3]    In his compliant, Rains misidentifies this grievance as "<u>AMF 19-10-214-36-20E</u>."  (ECF No. 1, PageID.12.)

On November 11, November 19, and November 25, 2019 Rains submitted medical kites concerning his soy intolerance, but healthcare told him that there was nothing they could do to help. (*Id.*, PageID.14-16.) Rains filed a third grievance on the issue, <u>AMF-19-12-2403-12h1</u>, on December 2, 2019. (*Id.*, PageID.16.) On December 4, 2019, Rains submitted another grievance, <u>AMF-19-12-2440-28f</u>,[4] this time complaining about the way that his grievances were being processed and continuously rejected despite their unrelated nature. (*Id.*, PageID.16-17.)

## III. Defendants' Motion for Summary Judgment

As noted above, Defendants move for summary judgment based on exhaustion for all but Rains's claims against Dietician Wellman.

### a. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[5] or whether it is so one-sided that one

---

[4] This grievance was not contained in Rains's Step III Grievance Report generated in April of 2020 (ECF No. 44-3), nor was it attached to Rains's complaint (ECF No. 1-1).

[5] In *Lee v. Willey*, the Sixth Circuit explained that the Seventh Amendment right to a jury trial does not extend to "every factual issue that arises in the course of a litigation." 789 F.3d 673, 678 (6th Cir. 2015) (quoting *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir.2008)). Instead, "threshold issues of judicial administration," such as issues of fact concerning exhaustion under the Prison Litigation Reform Act, may be decided in a bench trial. *Id.* In such a bench trial, the defendant bears the burden of

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### b. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is

---

showing that the plaintiff failed to exhaust available administrative remedies by a preponderance of the evidence. *Alexander v. Calzetta*, No. 16-CV-13293, 2019 WL 1011106, at *1 (E.D. Mich. Mar. 4, 2019) (determining that the preponderance of the evidence supported a finding that the plaintiff had not exhausted the grievance process).

inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Department of Corrections (MDOC) Policy Directive (P.D.) 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.  Inmates must first attempt to resolve a grievable issue informally within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control.  MDOC P.D. 03.02.130 ¶ Q.  If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ W.  The Policy Directive also provides the following directions

8

for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ U, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ U, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. When the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Ky. Dept. of Corr.*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018)

("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[6]

---

[6]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim

### c.  Summary of Rains's Relevant Grievances

Upon review of Rains's Step III Grievance Report (ECF No. 44-3) as well as the grievances attached to Rains's complaint (ECF No. 1-2.), it appears that Rains appealed four relevant grievances through Step III of the grievance process.  Those grievances are identified in the table below.

| Grievance No. | Person(s) Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 | Step III Response Mailed (Date) |
|---|---|---|---|---|---|---|---|
| AMF-19-10-2136-20e (ECF No. 44-3, PageID.494-499.) | DD Bush (named as DD Unknown) | Rains sent a letter to DD Bush about using canned fish in the Halal tray but did not receive a corrective response. Rains says he is enduring religious discrimination. | October 8, 2019 | Denied | Denied | Denied | January 3, 2020 |
| AMF-19-11-2271-28a (ECF No. 44-3, PageID.477, 481.) | Adamson, Willard | Rains kited Adamson and Willard, complaining that the soy products on his food tray are making him ill. He did not receive a response. | October 27, 2019 | Rejected as a Duplicate of AMF-19-10-2136-20e | Rejection Upheld | Rejection Upheld | January 13, 2020 |

---

"giving the prison staff a fair chance to remedy a prisoner's complaints."   *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

| Grievance No. | Person(s) Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 | Step III Response Mailed (Date) |
|---|---|---|---|---|---|---|---|
| AMF-19-12-2403-12h1 / AMF-19-11-2344-09e (ECF No. 44-3, PageID.431-436.) | Wellman | Rains kited Wellman about soy products making him ill, but Wellman has not modified his food tray to accommodate his needs. | November 25, 2019 | Denied under initial grievance number AMF-19-12- 2403-12h1 | Denied under grievance number AMF-19-11-2344-09e | Denied under grievance number AMF-19-11-2344-09e | January 24, 2020 |
| AMF-19-10-2195-12h3 (ECF No. 44-3, PageID.425-430.) | Wellman, Jeffery & Hill | Rains kited healthcare about soy products making him ill, but his needs are not being accommodated. | October  16, 2019 | Denied | Denied | Rejected as Untimely | February 6, 2020 |

Before proceeding to the analysis, the undersigned must untangle a web of confusion created by the MDOC in responding to grievance numbers AMF-19-11-2344-09e and AMF-19-12-2403-12h1.  Rains initially filed AMF-19-11-2344-09e on November 13, 2019.  His Step I grievance form is shown below.

(ECF No. 1-2, PageID.108.)  Although the copy provided by Rains is difficult to read, he essentially complains that the apple salad he received for lunch contained potatoes, when the recipe only called for carrots, apples, and raisins.  (*Id*.)  The Step I Respondent denied the grievance because he found that the potatoes did not violate the religious diet guidelines.  (*Id*., PageID.110.)  On December 2, 2019, Rains filed AMF-19-12-2403-12h1.  (ECF No. 44-3, PageID.434.)  Rains's Step I grievance form is shown below.

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

RECEIVED
DEC 0 3 2019

4835-4247 10/94
CSJ-247A

Date Received at Step I _12/3/19_    Grievance Identifier: ___AMF19114 | 24.03 | 12 | h | 1___

**Be brief and concise in describing your grievance issue.**  If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| James Rains | 850456 | AMF | 2/224 | 11/25/19 | 12/2/19 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? _11/25/19_
If none, explain why. _I sent a kite to individual mentioned below, to no avail._

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. _I grieve Kelly Wellman on the above date. I sent a kite to Wellman concerning the fact that I've sent her kites and filed medical kites about the soy making me throw up, have diarrhea, stomach pains and sometimes headaches, and she's done nothing to help me or modify my Halal trays. I'm being forced to eat food that is making me physically ill and K. Wellman - and others - has the authority to help, and refuses to do so._

(*Id.*)  In this grievance, Rains complained about Wellman's failure to accommodate his soy intolerance.  (*Id.*)  The confusion surrounding these grievances was created when the Step II appeals were processed.  The pertinent portions of Rains's appeal forms for both grievances are shown below.

14



(ECF No. 1-2, PageID.109.)



(ECF No. 44-3, PageID.432.)

The appeal forms show that Rains submitted his Step II appeals on the same date, and that when GC Hamel processed the appeal forms, he mixed up the number designations.  So, the relevant grievance against Wellman was grievance AMF-19-12-2403-12h1 at Step I, but grievance AMF-19-11-2344-09e at Steps II and III.  This is an important distinction because AMF-19-12-2403-12h1 does *not* appear on Rains's Step III Grievance Report, which usually indicates it was *not* pursued through all steps of the grievance process.  (*Id.*, PageID.420-424.)  However, AMF-19-11-2344-09e *does* appear on Step III Grievance Report.  (*Id.*, PageID.240.)  For the sake of consistency, the undersigned will refer to this grievance as grievance AMF-19-11-2344-09e in the analysis below.

### d.  Exhaustion Analysis

Defendants assert that all but Rains's claims against Defendant Wellman should be dismissed because the only relevant grievance that Rains properly pursed through each step of the process, AMF-19-11-2344-09e, complained of Wellman's conduct alone.  The only other grievance that Defendants identify as relevant, AMF-19-10-2195-12h3, was rejected as untimely at Step III.  However, as noted in the table above, a review of Rains's Step III Grievance Report reflects that AMF-19-11-2271-28a is also relevant.

Turning first to grievance AMF-19-11-2344-09e, Defendants concede that this grievance was properly pursued through all steps of the grievance process.  The undersigned agrees that the only individual grieved in AMF-19-11-2344-09e, and therefore the only person against whom Rains exhausted his claims via AMF-19-11-

16

2344-09e, is Dietician Wellman.  Rains's later reference to "others" in his grievance

did not, without more, exhaust claims against additional Defendants.

The exhaustion of Rains's claims against other Defendants, then, depends on

grievances AMF-19-10-2195-12h3 and AMF-19-11-2271-28a.

Rains's Step I form for grievance AMF-19-10-2195-12h3 is shown below.



(ECF No. 44-3, PageID.428.)  Here, Rains grieves Dietician Wellman, HUM Hill, and

an individual previously dismissed from this case.  But, as noted by Defendants, this

grievance was rejected at Step III.  That Step III rejection is shown below.

**Step III Grievance Response**

**JAMES RAINS**                    850456

**AMF    19102195**

Grievant alleges he has been inappropriately denied access to appropriate diet.

In accordance with PD 03.02.130 grievances are to be rejected when untimely. Pursuant to policy, this grievance was untimely filed by the grievant at the Step III appeal. The grievant's Step III appeal was received on January 22, 2020. While providing a grace period for standard mail; the grievance however was still not received in a suitable timeframe after the due date of January 10, 2020.

The grievance tracking number has been changed from AMF-19-10-2195-12H3 to AMF-19-10-2195-28e in order to reflect the grievance category code at Step III.

Grievance rejected.

Response of Bureau of Health Care Services                    Date:    1/30/2020

Approved: _____*Smoyer RN*_____                    Date: ___1/31/2020___
                    S. Smoyer, RN

_____*R D Russell*_____                    FEB 06 2020

Richard D. Russell  Manager, Grievance Section Office of Legal Affairs                    Date Mailed

(ECF No. 44-3, PageID.425.)   Because the grievance was rejected based on a procedural defect that arose at Step III of the grievance process, rather than a pre-existing procedural defect waived by the Step I and II Respondents, the undersigned agrees that Rains failed to properly exhaust the claims within AMF-19-10-2195-12h3. *Compare Sawaya v. Briske*, No. 1:20-CV-220, 2020 WL 5995681, at *4 (W.D. Mich. Sept. 8, 2020), *report and recommendation adopted*, No. 1:20-CV-220, 2020 WL 5993850 (W.D. Mich. Oct. 9, 2020) (finding that a grievance rejected as untimely at Step III failed to exhaust the claims stated within), *with Raper v. Controneo*, 2018 WL 2928188, at *1 (W.D. Mich., June 12, 2018) (finding that a grievance rejected for the first time at Step III based on a pre-existing procedural defect exhausted the claims stated within).  As such, the only question that remains is whether AMF-19-

18

11-2271-28a exhausted Rains's claims as to any Defendant other than Dietician Wellman.

The Step I form for grievance AMF-19-11-2271-28a, including the Step I response, is shown below.

(ECF No. 44-3, PageID.480.)  Here, Rains grieves SAC Adamson, Dietician Willard, and another individual previously dismissed from this case.  A review of the Step II and III responses reveals that the rejection of grievance <u>AMF-19-11-2271-28a</u> as duplicative of <u>AMF-19-10-2136-20e</u> was upheld through all steps of the grievance process.  (*Id.*, PageID.479, 482.)  As noted above, Rains argues that this rejection was improper. (ECF No. 1, PageID.12.)

MDOC P.D. 03.02.130 ¶ J(2) provides that a grievance shall be rejected if "[i]t raises issues that are duplicative of those raised in another grievance filed by the grievance."  When a grievance is rejected as duplicative, Defendants moving for summary judgment based on exhaustion must "compare the issues grieved in the first grievance to those grieved in the allegedly-duplicate grievances and show that every reasonable jury would think the rejections were proper."  *Greene v. Miller*, No. 2:16-CV-44, 2016 WL 6662558, at *4 (W.D. Mich. Oct. 24, 2016) (quoting *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016)), *report and recommendation adopted*, No. 2:16-CV-44, 2016 WL 6650148 (W.D. Mich. Nov. 10, 2016).  Rains's Step I form for grievance <u>AMF-19-10-2136-20e</u> is shown below.

(ECF No. 44-3, PageID.499.)

There are numerous differences between this Step I form and the Step I form for grievance AMF-19-11-2271-28a.  For starters, Rains asserts claims against different people in the grievances.  Moreover, in one grievance, Rains complains that he did not receive a response to his request to add tinned fish to his Halal meals. (Id.)  In the other, Rains complains that he has not received responses to his communications regarding the condition of the food he is receiving, or the fact that the soy in his Halal food tray making him physically ill. (*Id.*, PageID.480.)  On the other hand, the similarities between the two grievances are difficult to identify, except that both grievances concern Rains's food.  Accordingly, the undersigned thinks that a reasonable jury could find that grievance AMF-19-11-2271-28a was

improperly rejected as duplicative of grievance <u>AMF-19-10-2136-20e</u>.  In other words, there is a genuine issue of material fact precluding summary judgment as to the claims against SAC Adamson and Dietician Willard as asserted in grievance <u>AMF-19-11-2271-28a</u>.

## IV.  Rains's Motion for TRO and Preliminary Injunction

The undersigned must now address Rains's request for a TRO and preliminary injunction requiring Defendants to (1) provide Rains necessary medical care, (2) substitute the soy in Rains's Halal trays, (3) allow Rains access to the law library, (4) transfer Rains to a facility where his legal documents will not be stolen by staff, and (5) transfer Rains to a facility where he will not be subject to retaliatory physical abuse.  (ECF No. 37, PageID.332.)  In his motion, which doubles as a declaration, Rains asserts that since filing this case, he has experienced: (1) retaliatory false misconduct reports, (2) retaliatory confiscation of his mattress for a period of 36 days, (3) the inability to access the law library, (4) his legal documents being stolen, and (5) sexual assault at the hands of a non-party corrections officer.  (*Id.*, PageID.333-334.)  Meanwhile, Rains says that his grievances and complaints are being ignored or destroyed.  (*Id.*)

In seeking a TRO or preliminary injunction, Rains bears a heavy burden.  *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).  TROs and preliminary injunctions constitute some "of the most drastic tools in the arsenal of judicial remedies."  *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson*

*Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)).   The issuance of injunctive relief is committed to the discretion of the district court.   *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).   In exercising that discretion, a court must balance the following factors: (1) whether the plaintiff has shown a strong or substantial likelihood of success on the merits; (2) whether the plaintiff has shown irreparable injury; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing a preliminary injunction.   *United States v. Szoka*, 260 F.3d 516, 523 (6th Cir. 2001); *Washington v. Reno*, 35 F.3d 1093, 1098 (6th Cir. 1994); *Higgs v. Bland*, 888 F.2d 443, 448 (6th Cir. 1989).   These factors are not prerequisites to the grant or denial of injunctive relief but must be "carefully balanced" by the district court in exercising its equitable powers.   *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009.   Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.   *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).

This is Rains's second time asking this Court to award preliminary injunctive relief requiring Defendants to provide him with appropriate medical care related to his soy intolerance and to substitute out the soy in his Halal food tray. (*See* ECF No. 7 (motion for TRO and preliminary injunction).)   The Court denied his first motion

for injunctive relief because it determined that Rains had not made a substantial showing of a violation of his constitutional rights, and that his allegations did not demonstrate irreparable harm. (ECF No. 11, PageID.238-239.) In the time since this denial, Rains has not put anything on the record that changes this Court's evaluation of the propriety of such relief.

The remainder of Rains's allegations and requests for relief concern retaliation and sexual assault claims involving third parties which are unrelated to this case. While preliminary injunctions and TROs may be used to provide relief similar to that which "may be granted finally," they are not appropriate mechanisms to address matters unrelated to the claims underlying the case. *Siddiq v. Champion*, No. 2:04-CV-89, 2006 WL 1275403, at *2 (W.D. Mich. May 8, 2006) (quoting *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945)).

## V.    Recommendation

The undersigned respectfully recommends that this Court: (1) grant summary judgment with regards to DD Bush, HUM Hill, HUS Monville, and RN Lamb, (2) deny summary judgment with regards to SAC Adamson and Dietician Willard, and (3) deny Rains's motion for injunctive relief.

If the Court accepts this recommendation, Rains's First Amendment free exercise and RLUIPA claims against SAC Adamson, Dietician Willard, and Dietician Wellman, as well as Rains's Eighth Amendment deliberate indifference claims against Willard and Wellman, will remain.


Dated:   February 10, 2022                    /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE



**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).