UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


JAMES RAHEEM RAINS, #850456,                     Case No. 2:20-cv-32

    Plaintiff,                          Hon. Paul L. Maloney
                U.S. District Judge

  v.

KELLY WELLMAN, et al.,

    Defendants.
_____/

**<u>REPORT AND RECOMMENDATION</u>**

## I.  **Introduction**

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment (ECF No. 60), and Plaintiff's motion for summary judgment (ECF No. 63).

Plaintiff in this case — state prisoner James Raheem Rains — initiated this suit pursuant to 42 U.S.C. § 1983 on March 12, 2020.  In his verified complaint, Rains, a practicing Muslim, alleged that while he was confined at the Baraga Correctional Facility (AMF) in Baraga, Michigan, twenty-four AMF employees provided him with inadequate Halal food trays, forced him to conform to a vegan diet, and refused to accommodate his soy intolerance, in violation of his First, Eighth, and Fourteenth Amendment rights as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA).  (ECF No. 1, PageID.3-18.)  At this stage of the case, the only claims remaining are: Rains's deliberate indifference claims against AMF Dieticians Willard

and Wellman, and free exercise and RLUIPA claims against AMF Special Activities Coordinator (SAC) Adamson, Dietician Willard, and Dietician Wellman.

Defendants now move for summary judgment, as does Rains. Defendants argue that Rains cannot demonstrate that he had serious medical needs or that the Defendant Dieticians acted with deliberate indifference to those needs. (ECF No. 61, PageID.583-590.) Defendants further contend that Rains cannot show that the vegan religious meal substantially burdened his religious beliefs. (*Id.*, PageID.590-594.) In contrast, Rains contends that the headaches, stomach pain, vomiting, and diarrhea he experienced after consuming soy were serious medical needs, and that the Defendant Dieticians knew of and disregarded his need for a diet modification. (ECF No. 63, PageID.677-678.) Rains further asserts that Defendants substantially burdened his religious beliefs by forcing him to choose between his religious meal, becoming ill, and maintaining adequate nutrition. (*Id.*, PageID.679.)

The undersigned respectfully recommends that the Court deny Rains's motion for summary judgment and grant Defendants' motion for summary judgment. Defendants have established that there are no genuine issues of material fact, that Rains did not have a serious medical need, that Defendant Dieticians did not act with deliberate indifference to Rains's medical needs, and that Defendants did not substantially burden Rains's religious beliefs by providing him with a vegan religious meal tray.

If the Court accepts this recommendation, this case will be dismissed.

## II.    Procedural History

Rains filed suit on March 12, 2020.  (ECF No. 1.)  On April 10, 2020, the Court

issued a screening opinion (ECF No. 11) and order (ECF No. 12).  Although Rains

purported to set forth various free exercise, Establishment Clause, retaliation, access

to courts, RLUIPA, due process, deliberate indifference, and equal protection claims,

the Court found that Rains adequately stated only the following claims:

> (1) Plaintiff's Eighth Amendment claims against the Healthcare
> Defendants (Dieticians Patricia Willard and Kelly Wellman, Health
> Unit Manager Gloria Hill, Health Unit Supervisor Jamie Monville, and
> Nurse Patricia Lamb) in their respective personal capacities for
> damages, declaratory, and injunctive relief and in their respective
> official capacities for prospective declaratory and injunctive relief; (2)
> Plaintiff's free exercise claims relating to refusal to accommodate his soy
> allergy against the Free Exercise Defendants (the Healthcare
> Defendants plus Deputy Director Unknown Party and Special Activities
> Coordinator Steve Adamson) in their respective personal capacities for
> damages, declaratory, and injunctive relief and in their respective
> official capacities for prospective declaratory and injunctive relief; and
> (3) Plaintiff's RLUIPA claim relating to refusal to accommodate his soy
> allergy against the Free Exercise Defendants in their respective official
> capacities for prospective declaratory and injunctive relief.

(ECF No. 11, PageID.240-241.)

On May 10, 2021, Defendants Willard, Wellman, Hill, Monville, Lamb,

Adamson, and Bush (formerly referred to as Unknown Party) moved for summary

judgment based solely on Rains's failure to exhaust his administrative remedies.  On

February 10, 2022, the undersigned issued an R&R recommending that the Court

deny Defendants' motion as to Defendants Adamson and Willard, but grant

Defendants' motion as to Defendants Bush, Hill, Monville, and Lamb.  (ECF No. 49,

PageID.541-542.)  The Court adopted the undersigned's R&R on March 22, 2022.

(ECF No. 51.)  Thus, as noted above, the only remaining claims are: Rains's First Amendment free exercise and RLUIPA claims against Special Activities Coordinator (SAC) Adamson, Dietician Willard and Dietician Wellman, and Rains's deliberate indifference claims against Dietician Willard and Dietician Wellman.

### III.  Factual Allegations

Rains is a practicing Muslim who, during the times relevant to his claims, was incarcerated at AMF. (ECF No. 1, PageID.6.)  Rains says that in July of 2018, he requested to receive Halal trays in accordance with his religious beliefs.  (*Id.*, PageID.7.)  In August of 2018, Rains was approved to receive Halal food trays. However, Rains did not begin receiving his religious trays until June of 2019.  (*Id.*)

When Rains finally began receiving his religious trays, he noticed that he was not provided with any dairy, fish, or meat.  (*Id.*)  Rains subsequently complained to AMF officials about being forced to endure a vegan diet when his religious beliefs were compatible with many properly prepared animal products.  (*Id.*, PageID.8.)

On October 2, 2019, Rains sent a medical kite[1] for the first time complaining that the soy in his Halal food tray was causing him gastrointestinal distress.  (*Id.*, PageID.8.) The next day, Rains was called to medical to see a nurse.  Rains explained to the nurse that the soy was causing him to have stomach pain and diarrhea, and to vomit.  (*Id.*)  The nurse said that Rains was experiencing acid reflux even though Rains made no mention of acid reflux.  (*Id.*)

---

[1]    A 'kite' is a written communication by a prisoner to request services from prison staff, including medical care.

On October 8, 2019, Rains wrote to the Deputy Director requesting fish with his Halal meals, but Rains never got a response.  (*Id.*)  On October 16, 2019, Rains submitted another medical kite complaining about his reaction to soy.  (*Id.*, PageID.9.)  Two days later, Rains was called out to see a doctor, who told Rains he was only being seen for acid reflux.  (*Id.*)  When Rains explained that acid reflux was not the issue, the doctor allegedly cut Rains off and then dismissed him without doing a physical exam or considering additional issues.  (*Id.*)

On October 25, 2019, Rains submitted his first grievance – grievance AMF 19-20-2195-12h3 – complaining that healthcare was not doing anything to address his negative reaction to soy.  (*Id.*)  One of AMF's nurses responded.  (*Id.*, PageID.9-10.)  The nurse had consulted with Dietician Wellman and noted that Rains had not kited Dietician Wellman.  (*Id.*, PageID.10.)  The nurse further noted that when Rains was seen in early October, he was provided with an antacid.  When he was seen by the doctor a few weeks later, Rains denied having abdominal issues.  (*Id.*)  The nurse indicated that Rains did not require a modification of his religious diet because he did not have a medical diet.  Finally, the nurse noted that Rains's weight had remained stable, and there was no indication for medical dietary changes.  The nurse therefore denied Rains's grievance.  (*Id.*)

Rains says that one of the most common food allergies is an allergy to soy, and that some of the most common allergic reactions to food include vomiting and diarrhea.  Rains says that he was experiencing these reactions to soy.

On October 27, 2019, Rains sent letters to SAC Adamson and Dietician Willard regarding his reaction to soy.  (*Id.*, PageID.11.)  When Rains did not receive a response, he filed another grievance – <u>AMF-19-11-2271-28A</u> – in which he says the AMF Grievance Coordinator improperly rejected as duplicative of another grievance. (*Id.*, PageID.12.)

On November 11, November 19, and November 25, 2019, Rains submitted more medical kites concerning his soy allergy, but healthcare told him that there was nothing they could do to help.  (*Id.*, PageID.14-16.)  Rains filed a third grievance on the issue – <u>AMF-19-12-2403-12H1</u> – on December 2, 2019.  (*Id.*, PageID.16.)  On December 4, 2019, Rains submitted another grievance – <u>AMF-19-12-2440-28F</u> – this time complaining about the way that his grievances were being processed and continuously rejected despite their unrelated nature. (*Id.*, PageID.16-17.)

Rains says that despite his numerous complaints, he continues to receive inadequate nutrition as he is forced to abstain from consuming soy without AMF staff providing him an adequate substitute.  (*Id.*, PageID.17-18.)

## IV.    Rains's Medical Records

Rains's medical records reflect that on October 3, 2019, Rains kited health care complaining that he "could not keep the Halal tray down" and that "the other day, it came back up with blood."  (ECF No. 61-3, PageID.611.)  When a nurse visited his cell, Rains was sleeping.  (*Id.*, PageID.621.)  Rains awoke and told the nurse it was okay to make him an appointment with health care.  The nurse noted that Rains was not vomiting or exhibiting signs of distress at the time.  (*Id.*)

Rains was called to health care the next day and was seen by a nurse. (*Id.*, PageID.614.) Rains reported that he had had five or six vomiting episodes since May, and that he believed the soy in his Halal tray was to blame. (*Id.*) The nurse ultimately provided Rains with Alamag,[2] told Rains to increase his fluid intake, and told Rains to kite health care if his symptoms worsened. (*Id.*) Rains weighed 162 pounds during this appointment. (*Id.*, PageID.613.)

About two weeks later, on October 18, 2019, Rains was seen by an AMF doctor. (*Id.*, PageID.615.) During this appointment, Rains denied experiencing abdominal issues. (*Id.*) The doctor noted that Rains did not appear to be in distress, and that he appeared to be well-nourished. Rains weighed 161 pounds. (*Id.*)

On November 13, 2019, a nurse at AMF noted that Rains had been complaining about headaches and vomiting connected to his soy intake. (*Id.*, PageID.617.) The nurse noted that Rains wanted his Halal tray to be modified due to his symptoms and commented that the complaint would be referred to Dietician Wellman for further review. (*Id.*)

Dietician Wellman performed a nutritional assessment on November 15, 2019. (*Id.*, PageID.618.) During the assessment, Dietician Wellman noted Rains's complaints regarding soy. Wellman considered Rains's current Body Mass Index of

---

[2]     Alamag is a medication "used to treat the symptoms of too much stomach acid such as stomach upset, heartburn, and acid indigestion. It is also used to relieve symptoms of extra gas such as belching, bloating, and feelings of pressure/discomfort in the gut." *Alamag 200 Mg-200 Mg-20 Mg / 5 Ml Oral Suspension - Uses, Side Effects, and More*, WebMD, https://www.webmd.com/drugs/2/drug-15535-769/alamag-oral/aluminum-magnesium-antacid-simethicone-oral/details (last visited Dec. 13, 2022).

22, his six-pound weight gain while on the religious diet, and his nutritional needs of approximately 2300 calories and 58 grams of protein, in comparison to the nutrients provided by the religious meal, which comprised of approximately 2600 calories, and 90 grams of protein.  Wellman came to the following conclusion with respect to Rains's dietary needs:

> Given that [patient] has denied symptoms of food [intolerances], has gained weight while on the religious diet, remains within a healthy weight range, the religious menu[] is exceeding his nutritional needs, and diets are not modified to accommodate individual food intolerances, there is no indication to support modification of the religious diet for [patient's] subjective [complaint] of soy intolerance.

(*Id.*)

On November 21, 2019, Rains again complained that he was experiencing stomach pains, diarrhea, vomiting, and headaches in response to consuming soy.  (*Id.*, PageID.620.)  He was scheduled for an appointment with a nurse practitioner (NP) on December 6, 2019.  (*Id.*, PageID.622.)  During that appointment, Rains complained that Wellman was not changing his diet to accommodate his issues with soy.  (*Id.*) The NP noted that she was unsure based on Rains's complaints how often he experienced gastrointestinal problems.   Rains weighed 157 pounds at this appointment, and the NP noted that his BMI was normal.  (*Id.*)  The NP told Rains that she would consider allergy testing if indicated, but also told Rains that he should just avoid the soy on his trays.  (*Id.*)

Finally, on December 17, 2019, Dietician Wellman met with Rains to further discuss his diet modification request.  (*Id.*, PageID.625.)  During this appointment, Rains weighed 157 pounds.  Wellman explained that the MDOC does not modify diets

for food intolerances.  She told Rains that he could try eating smaller portions of the foods that are causing him problems, and that he should be sure to eat everything else on his plate.  (*Id.*)

## V.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## VI.    Deliberate Indifference

Rains first alleges that the Defendant Dieticians were deliberately indifferent to his serious medical needs when they knew of his negative reactions to soy, and nevertheless refused to alter his diet.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  It obligates

prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).  A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

To succeed on a claim of deliberate indifference, a prisoner who has received medical attention "must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  And the prisoner must place medical evidence into the record verifying the detrimental effect of the inadequate treatment. *See Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (establishing that a prisoner must submit verifying medical evidence to support a deliberate indifference claim based on treatment delay); *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004) (reiterating that a prisoner must submit verifying medical evidence to support a deliberate indifference claim based on inadequate treatment).

The subjective component of a deliberate indifference claim requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.*; *see also Estelle*, 429 U.S. at 105-06 ([A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. . . . Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Differences in judgment between inmate and prison medical personnel regarding the appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018). There, the court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference. Instead, the plaintiff must show that each defendant acted with a mental state "equivalent to criminal recklessness." This showing requires proof that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk" by failing to take reasonable measures to abate it.
>
> A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.
>
> But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor,

after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals."  That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "consciously expos[ed] the patient to an excessive risk of serious harm."

*Id.* 738–39 (6th Cir. 2018) (internal citations omitted).

As an initial matter, the undersigned points out that Rains's complaint contains only two allegations concerning Dietician Williard: the first, that he sent Willard a communication regarding his soy intolerance on October 27, 2019, and never heard back, and the second, that he filed a grievance against Willard on November 11, 2019.  Liability under § 1983 with respect to a state official in their individual capacity is premised upon the official's personal involvement in the violation of the plaintiff's rights. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005); *Bennett v. Schroeder*, 99 F. App'x 707, 713-714 (6th Cir. 2004).  Thus, claims against public officials in their individual capacity "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'"  *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999) (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998), *cert. denied*, 526 U.S. 1115, 119 S.Ct. 1763, 143 L.Ed.2d 793 (1999)).  At this stage of the case, Rains has not set forth any evidence that Dietician Willard was personally involved in denying Rains's request for a diet modification.  Instead, Rains's medical records reflect that Dietician Wellman was tasked with considering Rains's complaints, and the propriety of a soy-free diet

13

accommodation.  In the opinion of the undersigned, Rains's allegation that he kited Dietician Willard's about his soy intolerance and that she did not respond is simply insufficient to establish that Willard was personally involved in the alleged Eighth Amendment violation.

But even if Rains had established Willard's personal involvement, the undersigned finds that Rains's deliberate indifference claim against the Dieticians fails for a number of reasons.  First, Rains has failed to establish that his soy intolerance or allergy constituted a sufficiently serious medical need.  Second, the Defendant Dieticians have established that while they may independently evaluate the necessity of a diet accommodation, they lack authority to order a soy-free diet even if they believe it to be necessary.  Third and finally, even if the Defendant Dieticians had the authority to order a soy-free diet, Rains has not established that the Dieticians acted with deliberate indifference to his medical needs when they determined that a diet accommodation was unnecessary.

Turning first to the objective component of Rains's claim, there are two situations in which a food allergy may constitute a sufficiently serious medical need: (1) when the allergy poses a "'sufficiently serious' injury or medical consequence," and (2) when a prisoner's allergy prevents them from receiving nutritionally adequate food. *Vartinelli v. Aramark Corr. Servs., LLC*, No. 18-CV-10964, 2019 WL 1402653, at *6-7 (E.D. Mich. Mar. 28, 2019) (collecting cases), *aff'd*, 796 F. App'x 867 (6th Cir. 2019).

14

For example, in *Williams v. Horvey*, the court found that the plaintiff's food allergies constituted serious medical needs where they caused him to sweat, experience hot flashes, and vomit, in addition to causing his throat to swell.  No. 14-CV-1289-JPG, 2014 WL 6657703, at *1, 3 (S.D. Ill. Nov. 24, 2014).  But in *Bailey v. Aramark Corp.*, the court determined that that the plaintiff's alleged allergy did not satisfy the objective component of his deliberate indifference claim where it merely caused him to develop a rash or cysts.  No. CV 16-343-JMH, 2017 WL 3841687, at *4 (E.D. Ky. Sept. 1, 2017); *see also Kensu v. Rapelje*, No. 12-11877, 2015 WL 5161629, at *4 (E.D. Mich. Sept. 1, 2015) (finding that the plaintiff did not allege a sufficiently serious medical need where he claimed to have a gluten or dairy intolerance that caused him constipation and an increase in phlegm production).

In *Escalante v. Huffman*, a district court in West Virginia determined that the plaintiff stated a deliberate indifference claim where his food allergy caused him to lose thirty-four pounds over the course of a year, and to experience dizzy spells.  No. 7:10CV00211, 2011 WL 3107751 (W.D. Va. July 26, 2011), *report and recommendation adopted*, No. 7:10CV00211, 2011 WL 3584992 (W.D. Va. Aug. 15, 2011).  But in *Kemp v. Drago*, another district court found that a seventeen-pound weight-loss was not medically significant where the plaintiff was "never malnourished."  No. CA 1:12-1481-JFA-SVH, 2013 WL 4874972, at *9 (D.S.C. Sept. 11, 2013), *aff'd*, 558 F. App'x 328 (4th Cir. 2014).

Even assuming that Rains has a soy allergy or intolerance, the undersigned finds that Rains has failed to create a genuine issue of material fact as to whether

that intolerance constituted a serious medical need.  Rains says that consuming soy
caused him to experience stomach pains, diarrhea, vomiting and headaches.  (ECF
No. 1, PageID.14.)  On one occasion, Rains reported to health care that there was
blood in his vomit.  (ECF No. 61-3, PageID.611.)  Rains also says that he is "not
receiving the correct amount of nutrients needed to sustain his health" because he is
abstaining from eating the soy in his religious meals, causing his mental and physical
health to "deteriorat[e]."  (ECF No. 1, PageID.17.)

As an initial matter, courts are reluctant to find that occasional
gastrointestinal symptoms alone may constitute a sufficiently serious medical need.
*Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (finding that the plaintiff failed to
produce sufficient evidence that his alleged stomach disorders constituted serious
medical needs); *Smith v. Hepp*, No. 18-CV-669-JDP, 2022 WL 1001183 (W.D. Wis.
Apr. 4, 2022) ("Stomach distress often is not serious enough to support an Eighth
Amendment claim" (citing *Riley El v. Godinez*, No. 13-c-5768, 2016 WL 4505038, at
*11 (N.D. Ill. Aug. 29, 2016))).  Accordingly, courts have rejected deliberate
indifference claims based on food intolerances marked by simple gastrointestinal
distress.  *Brady v. Wexford Health Sources, Inc.*, No. 3:17-CV-883-MAB, 2021 WL
4262430 (S.D. Ill. Sept. 20, 2021) (finding no evidence that a plaintiff's "severe gas
and constipation," which the plaintiff believed to be a result of consuming soy,
constituted a serious medical need); *Ybarra*, 2012 WL 12986185, at *9 (finding that
the plaintiff had not provided sufficient evidence of a serious medical need where his
medical records demonstrated that he had a food intolerance, not a food allergy).  And

although Rains once alleged that there was blood in his vomit, the undersigned is not convinced that such an isolated incident under the circumstances presented takes simple gastrointestinal symptoms and elevates them to the level of a serious medical need. *But see Gayton v. McCoy*, 593 F.3d 610, 621 (7th Cir. 2010) ("Vomiting, in and of itself, is not an uncommon result of being mildly ill, and, absent other circumstances (e.g., vomiting continuously for a long period of time, having blood in one's vomit, or the like), does not amount to an objectively serious medical condition.") Furthermore, Rains's allegation that he has been receiving inadequate nutrition is contradicted by the record.

Rains's medical records demonstrate that on July 30, 2018, before he began the religious diet, he weighed 153 pounds.  (ECF No. 61-3, PageID.618.)  When he was first seen regarding his gastrointestinal complaints on October 4, 2019, he weighed 162 pounds.  (*Id.*, PageID.613.)  At his December 17, 2019 appointment with Dietician Wellman, Rains weighed 157 pounds, with a BMI of 21.9.  As noted by Wellman, and by the NP who saw Rains on December 6, 2019, 21.9 is a healthy BMI.  Furthermore, Wellman calculated Rains's nutritional needs during the November 15, 2019 assessment.  (*Id.*, PageID.618.)  She determined that Rains needed approximately 2300 calories a day and 58 grams of protein, and that the religious menu provided over 2600 calories and 90 grams of protein.  (*Id.*)  And in an affidavit, Wellman provides that prisoners who are food intolerant can maintain adequate nutrition by simply avoiding or consuming smaller amounts of the problem food.  (ECF No. 61-7, PageID.645.)  Accordingly, in the opinion of the undersigned, Rains has failed to

establish a genuine issue of material fact as to whether he suffered a sufficiently serious medical need: there is no evidence that consuming or avoiding soy resulted in a serious medical injury or in malnutrition.  But even if Rains had a sufficiently serious medical need in the form of a soy allergy or intolerance, he has not established that the Defendant Dieticians were deliberately indifferent to that need.

To start, it does not appear that the Dieticians had the authority to either: (1) modify the vegan menu to accommodate a soy-free diet without an order from a medical provider, or (2) provide Rains with medical care.  Rains's ultimate complaint is that he was not issued a medical diet as treatment for his soy allergy or intolerance. In his brief in opposition to Defendants' motion for summary judgment, Rains further complains that Defendant Dieticians never examined him or ran allergy tests in order to give Rains a medical diagnosis.  (ECF No. 66, PageID.696-698.)  But according to Defendant Wellman's affidavit, only a physician, physician's assistant, or nurse practitioner can approve a medical order for a soy-free diet; a registered dietician cannot.  Indeed, MDOC Policy Directive 04.07.101 ¶ G (Therapeutic Diet Services) states that "all therapeutic diets shall be ordered by the MP or dentist based on guidelines set forth in the MDOC Diet Manual."[3]  (ECF No. 61-5, PageID.632.)  It therefore appears that Rains has the wrong defendants for his deliberate indifference claim; it was his medical providers who possessed the authority to order a medical diet.

---

[3]    However, the undersigned notes that the MDOC Diet Manual is written by the registered dieticians.  (ECF No. 61-5, PageID.632 (MDOC Policy Directive 04.07.101 ¶ F).)

But even if Willard and Wellman were proper defendants for Rains's Eighth Amendment claim, the records do not reflect that they acted with deliberate indifferent to Rains's needs.  The record of Rains's nutritional assessment reflects an in-depth consideration of Rains's medical history, recent complaints, fluctuation in weight, and overall nutritional needs.  Based on these considerations, Dietician Wellman determined that Rains was receiving adequate nutrition, and did not have a medical need for a diet modification.  And when Rains continued to complain that he was experiencing gastrointestinal problems, Wellman met with Rains again, providing him with further guidance on his vegan religious meal, and how he might minimize any symptoms of a soy intolerance.

Ultimately, Rains simply disagrees with the steps Defendant Dieticians took with respect to his alleged soy intolerance or allergy.  Rains believes the correct course of action was to modify his diet; Defendants did not believe that a diet modification was medically necessary, and instead provided Rains with counseling on avoiding the soy in his diet.  When a prisoner's allegations can be reduced to a disagreement between the prisoner and provider's course of treatment, those allegations do not state a claim of deliberate indifference. *Sanderfer*, 62 F.3d at 154-55; *Ward*, 1996 WL 627724, at *1.  Accordingly, the undersigned recommends that the Court grant Defendants' motions for summary judgment as to Rains's deliberate indifference claim.

## VII.   Free Exercise and RLUIPA

The undersigned now turns to Rains's claims against Defendants under the First Amendment Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act.  Here, Rains asserts that Defendants' refusal to alter his religious diet to include a Halal soy alternative infringed upon his religious beliefs.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Thus, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held; and (3) Defendants' behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997).

A practice will not constitute an infringement on a prisoner's free exercise of religion unless it "place[s] a substantial burden on the observation of a central

religious belief or practice...." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch*, 627 F. App'x at 485 (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion."). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. Such a burden "must place more than an inconvenience on religious exercise." *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 20014)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult." *Id.*

The Court's analysis of Rains's RLUIPA claim parallels the analysis of his First Amendment free exercise claim. In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.*, § 2000cc-5(7). While this definition of religious exercise is broad, it does require that the plaintiff's religious beliefs be "sincerely held." *Episcopal Student Found. v. City of Ann Arbor*, 341 F. Supp. 2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). However, prison officials may not inquire into whether a

particular belief or practice is "central" to a prisoner's religion.  *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held"); *Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) (holding that the "touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of 'whether the beliefs professed . . . are sincerely held,' not whether 'the belief is accurate or logical.'").

Although the phrase "substantial burden" is not defined in the RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733-34 (6th Cir. 2007) (citations omitted); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise).  Similarly, if a policy requires a petitioner to "engage in conduct that seriously violates [his] religious beliefs" or face disciplinary action, then the burden is substantial.  *Hobbs*, 574 U.S. at 361 (quoting *Hobby Lobby*, 573 U.S. at 720).  Moreover, the fact that the petitioner can engage in other forms of religious exercise is not relevant to whether the burden is substantial.  *Id.*

Defendants do not contest that Rains holds sincere religious beliefs, or that the practice of following a Halal diet is a religious practice.  Instead, Defendants aver

that their decisions did not substantially burden that practice.  (ECF No. 61, PageID.591.)

In its screening opinion, this Court found that Rains's complaint stated RLUIPA and free exercise claims because "[a]ccepting [his] allegations as true regarding his soy allergy/intolerance, he must choose one of three options: (1) abandon his religious diet practices, (2) endure gastrointestinal discomfort including diarrhea, vomiting, and stomach pain, or (3) have less than adequate nutrition from his religious diet." (ECF No. 1, PageID.10.)  The Court determined that placing the plaintiff in the position to choose between those three options appeared to be "precisely the type of pressure that substantially burdens the free exercise of his religious practice."  *Id.* But the record now before the Court reflects that Rains was not in fact placed in this position.

According to Dietician Wellman, the vegan menu includes a variety of foods. (ECF No. 61-7, PageID.643.)  Sometimes prisoners on the vegan menu are served soy, but sometimes they are served bean spreads, bean burgers, peanut butter, oatmeal patties, or other foods instead.  (*Id.*)  Wellman says that even when a vegan meal includes soy, there are soy-free foods available such as potatoes, rice or noodles, vegetables, breads, fruits, and desserts.  (*Id.*)  And Wellman says that a prisoner who suffers from a food intolerance, such as a soy intolerance, can maintain adequate nutrition by avoiding the problem food or reducing the amount of the problem food that he consumes.  (*Id.*, PageID.645.)

The undersigned reiterates that Wellman calculated Rains's nutritional needs during the November 15, 2019 assessment.  (*Id.*, PageID.618.)  She determined that Rains needed approximately 2300 calories a day and 58 grams of protein.  (*Id.*)  The religious menu provided over 2600 calories a day and 90 grams of protein.  (*Id.*)  That 300-calorie surplus supports Wellman's contention that a food-intolerant prisoner such as Rains can avoid problem foods on their religious trays without forfeiting their nutritional needs.  And Rains presents no evidence to the contrary.

As such, the record reflects that Rains was faced with the following choices with respect to his vegan religious diet: (1) abandon his religious diet practices, (2) endure gastrointestinal discomfort, or (3) avoid the soy in his meals *and maintain adequate nutrition*.

Accordingly, Rains cannot establish that Defendants substantially burdened his religious exercise.  The record reflects that Rains's vegan religious diet adhered to his religious beliefs, and that Defendants did not put Rains in the position to abandon that diet or else receive inadequate nutrition.  In other words, Rains was not presented "an illusory or Hobson's choice where the only realistically possible course of action available . . . trenches on sincere religious exercise." *Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014).   Rains had the option of avoiding foods that caused him gastrointestinal distress while remaining on the vegan religious meal plan; Rains's preference for a diet modification including an alternative source of protein does not state a First Amendment free exercise or RLUIPA claim.  *Robinson v. Jackson*, 615 F. App'x 310 (6th Cir. 2015) ("[T]here is no constitutional right for

each prisoner to be served the specific foods he desires—such as Halal meat—in prison." (citing *Spies v. Voivich*, 173 F.3d 398, 406–07 (6th Cir.1999))).   Accordingly, the undersigned recommends that the Court dismiss Rains's RLUIPA and free exercise claims against Defendants.

## VIII.   Qualified Immunity

In addition to arguing that they did not violate Rains's rights under the Eighth Amendment, First Amendment, or the RLUIPA, Defendants assert that they are entitled to qualified immunity.  (ECF No. 61, PageID.594.)

Defendants' claim for qualified immunity is largely redundant.  After initially arguing that they are entitled to judgment because they did not violate Rains's Eighth Amendment, First Amendment, or RLUIPA rights, they argue that they are entitled to judgment based on qualified immunity because they did not violate Rains's Eighth Amendment, First Amendment, or RLUIPA rights.   In any event, the undersigned agrees; because there are no genuine issues of material fact and the undersigned finds that Defendants did not violate Rains's clearly established rights, Defendants are entitled to qualified immunity.  *See Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) ("Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

## IX.     Recommendation

The undersigned respectfully recommends that the Court deny Rains's motion for summary judgment (ECF No. 63) and grant Defendants' motion for summary judgment (ECF No. 60).   Defendants have established that there are no genuine issues of material fact, that Rains did not have a serious medical need, that Defendant Dieticians did not act with deliberate indifference to Rains's medical needs, and that Defendants did not substantially burden Rains's religious beliefs by providing him with a vegan religious meal tray.

If the Court accepts this recommendation, this case will be dismissed.


Dated:   December 30, 2022                                    /s/ *Maarten Vermaat*
                                                             MAARTEN VERMAAT
                                                             U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).